**Kathy Gayle DAVIS, Plaintiff–**
**Appellant,**

v.

**RICH PRODUCTS CORPORATION,**
**Defendant–Appellee.**

**No. 00–5217.**

United States Court of Appeals,
Sixth Circuit.

April 9, 2001.

of Michigan, sitting by designation.

Before COLE and GILMAN, Circuit Judges, ALDRICH,* District Judge.

COLE, Circuit Judge.

Plaintiff–Appellant Kathy Gayle Davis filed suit against Defendant–Appellee Rich Products Corporation, alleging retaliatory discharge in violation of 42 U.S.C. § 2000e–3(a) ("Title VII"). Davis appeals the grant of summary judgment in favor of Defendant, assigning error to the district court's determination that Davis failed to establish a prima facie case of retaliation by showing either: (1) that she engaged in any "protected activity" within the meaning of Title VII; or (2) a "causal connec-

---

* The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation.

tion" between her alleged protected activity and her discharge. For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

Davis worked for Defendant from 1984 until her termination in May 1997. In 1995, Davis's friend and co-worker, Elizabeth Moon, told Davis that she was being sexually harassed by two plant supervisors and that her complaints to management had resulted in threats by other plant managers. Defendant repeatedly demoted Moon and ultimately suspended her for two weeks. Following Moon's suspension, Defendant began an internal investigation of Moon's complaints. In September 1995, as part of this investigation, Human Resources Manager Mike Gallo questioned Davis about Moon's charges. Davis recounts that interview as follows:

I responded by telling Mr. Gallo that I had not personally seen anyone do anything improper to Ms. Moon, but that she had related to me that she was upset, and that I could see that she was upset. I told him that I knew that whatever she said about the accusations, I would believe them to be true, because she would never intentionally cause trouble, or misstate the truth about such a serious situation. Mr. Gallo acted as though he did not want me to repeat that information to any other persons, and told me that I should not discuss what I had told him with anyone.

Moon ultimately filed a Title VII suit against the company in August 1996.

In the spring of 1997, twenty months after her meeting with Gallo, Davis began missing work due to severe headaches. In a memorandum dated March 12, 1997, Gallo notified Davis that she had exhausted all of her paid-time-off ("PTO") days and reminded her of the company's written attendance policy. This memorandum explained: (1) if an employee is absent after having exhausted all PTO days, then the employee must provide a doctor's excuse indicating that the employee was unable to work on the day in question; (2) failure to provide such an excuse results in the absence being counted as "unexcused;" and (3) an employee who has two or more unexcused absences in a six-month period is subject to termination. The memorandum specifically informed Davis that an absence for personal illness would be excused only if "verified by a doctor's excuse. The doctor's excuse would indicate that the associate was unable to work the day of the absence."

During April and early May 1997, Davis was absent from work for four consecutive weeks: she provided a doctor's excuse for the week of April 7th; she provided no doctor's excuse for the week of April 14th; she was on vacation for the week of April 21st; and she provided a doctor's excuse for the week of April 28th.

In early May 1997, Gallo met with Davis and told her that she had exceeded the number of unexcused absences allowed under the attendance policy and would need a doctor's excuse for the week of April 14th. Davis explained that it was her understanding from the remarks of her physician's nurse that she should remain away from work during that week, but conceded that this was a misunderstanding and that her doctor had not so instructed her. Davis asked that she be allowed to apply retroactively some of her accumulated vacation days to her unexcused absences, but Gallo denied her request.

On May 20, 1997, as a result of Davis's five-day, unexcused absence from work during the week of April 14, 1997, Defendant terminated Davis for exceeding the number of unexcused absences allowed under the company's attendance policy. In November 1997, Davis filed a charge of

discrimination with the Equal Employment Opportunity Commission ("EEOC"), and in August 1998, Davis filed this action in federal court. Davis alleges that she was terminated not as a result of exceeding the number of unexcused absences allowed under the attendance policy, but rather, solely as a result of her participation in the September 1995 meeting with Gallo nearly two years earlier.

Although Davis's complaint does not expressly invoke Title VII's opposition clause, the district court reasonably construed her complaint as alleging claims under both the opposition and participation clauses of Title VII. The district court held that Davis failed to establish a prima facie case of retaliation under either clause because she not only failed to show that she engaged in any protected activity within the meaning of Title VII, she also failed to establish a causal connection between her activity and her termination. Furthermore, the district court recognized that even if Davis had established a prima facie case, her claim nevertheless would fail because she could not show that Defendant's articulated reason for her termination was a mere pretext for discrimination.

## DISCUSSION

### I. STANDARD OF REVIEW

We review a district court's decision to grant a motion for summary judgment de novo. *See Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996). Summary judgment is appropriate when there exists "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

### II. RETALIATORY DISCHARGE

Title VII makes it unlawful for an employer to retaliate against an employee who has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (1994). These two provisions of Title VII are known as the "opposition clause" and the "participation clause." *See Johnson v. University of Cincinnati,* 215 F.3d 561, 578–79 (6th Cir.2000). To establish a claim of retaliation under either clause, a plaintiff must meet the test of a slightly modified *McDonnell Douglas* framework by showing that: (1) she engaged in a "protected activity" within the meaning of Title VII; (2) the employer knew of such activity; (3) the employer thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792–93 (6th Cir. 2000) (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990)). Once the plaintiff establishes a prima facie case of retaliation, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *See id.* at 792–93 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). The plaintiff then must demonstrate "that the proffered reason was not the true reason for the employment decision," *i.e.,* that the reason was a mere pretext for discrimination. *See id.* at 793, 93 S.Ct. 1817 (quoting *Burdine,* 450 U.S. at 256; 101 S.Ct. 1089). The plaintiff bears the burden of persua-

sion throughout the entire process. *See id.*

■ Here, the district court held, "Plaintiff's allegations concerning her interview with members of Rich Products management and her ongoing support of Ms. Moon fail to constitute 'participation' such that she may invoke the protections of Title VII." The district court also determined that "[a]lthough other facts might be developed which would show that Plaintiff did participate in an EEOC investigation of Ms. Moon's allegations or in the subsequent litigation between Defendant and Ms. Moon, those facts are not contained in the record." Davis does not dispute this finding. Thus, the question before us is limited to whether Davis's meeting with Gallo in Defendant's internal investigation of Moon's charges constitutes "participation" within the meaning of Title VII.[1]

In *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir.1989), we recognized that "once the activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation." *Id.* at 1312 ("The exceptionally broad protection of the participation clause extends to persons who have participated in any manner in Title VII proceedings.") (internal quotation marks and citation omitted). Although we have not directly addressed the question, other courts have held that participation in an internal investigation does not constitute "protected activity" within the meaning of Title VII as a matter of law. *See Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir.1999) (holding that the participation clause does not apply absent "the beginning of a proceeding or investigation under Title VII"); *Tuthill v. Con-*

*solidated Rail Corp.*, 1997 WL 560603,*3 (E.D.Pa. Aug. 26, 1997) ("Title VII's definition of protected activity does not include participation in an internal investigation."); *see also Futoran v. Dalton*, 141 F.3d 1175, 1998 WL 166536 (9th Cir. Mar.31, 1998) (unpublished) (affirming grant of summary judgment for lack of a causal link where the district court had granted summary judgment on ground that plaintiff's participation in an internal investigation of sexual harassment charges did not constitute protected activity).

■ On the facts of this case, we need not decide whether participation in an internal investigation can ever constitute "protected activity" within the meaning of Title VII's participation clause. As the district court noted, even if Davis could show that she engaged in protected activity, she failed to show a causal link between that activity and her termination. Although temporal proximity of an adverse employment action to the protected activity is relevant to the question of whether there exists a causal connection between the two, *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1118 (6th Cir.1996), no one factor is dispositive, *see Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir.1987). In fact, in *Ballanger v. Bunge Foods*, 2000 WL 1871729 (6th Cir. Dec.12, 2000), we held that the plaintiff established a causal connection between his protected activity and the adverse action despite a three-year lapse in time. We stated:

> [W]hile the issue appears to be close, Ballanger sufficiently established a "causal connection" between his protected conduct and the adverse employment action, despite the three-year lapse be-

---

1. Although Davis also alleges that she lent ongoing emotional support to Moon during the investigation of Moon's charges, she does not allege that Defendant was aware of her relationship with Moon, nor does she point to any evidence to support a finding that Defendant had any such knowledge.

tween his 1995 EEOC charge and his termination in 1997. While there is a lack of temporal proximity between these events, Ballanger sufficiently alleged that, after he filed his 1995 EEOC charge, his supervisors began to harass him by placing in his file memoranda reprimanding him because of [a co-worker's] unsubstantiated allegations of sexual harassment, and that his supervisors began to subject him to heightened scrutiny concerning his job performance.

*Id.* at *2. We ultimately affirmed summary judgment in *Ballard* on the ground that the defendant articulated a legitimate, non-discriminatory reason for terminating the plaintiff. *See id.*

Here, Davis presents no additional evidence of reprisals resulting from her September 1995 meeting with Gallo. In her brief to this Court, Davis simply states, "That early investigation culminated, eventually, in reprisals against both Elizabeth Moon and Appellant Kathy Davis." Davis points to nothing in the record to support this allegation. Indeed, she admits, "The only negative comments noted on [her] annual reports, throughout the years, were those pertaining to 'attendance,' which were generally referable to a work related injury to her arm...." Accordingly, Davis has presented nothing to link her participation in the internal investigation of Moon's charges to her termination for excessive absenteeism nearly two years later. And in any event, as the district court noted, even if Davis could make out a prima facie case of retaliation by showing that she engaged in a protected activity that was causally connected to her subsequent termination, she wholly failed to show that Defendant's articulated reason for her termination, *i.e.,* excessive absen-

teeism, was a mere pretext for discrimination.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.