*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0388P (6th Cir.)
File Name: 03a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————

DONALD ABBOTT,
  *Plaintiff-Appellant,*

  *v.*

CROWN MOTOR COMPANY,
INC.,

  *Defendant-Appellee.*

No. 02-3365

—————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-01275—George C. Smith, District Judge.

Argued: September 11, 2003

Decided and Filed: November 3, 2003

Before: KENNEDY, GUY, and DAUGHTREY, Circuit
Judges.

—————

## COUNSEL

**ARGUED:** Brian K. Murphy, MURRAY, MURPHY,
MOUL & BASIL, Columbus, Ohio, for Appellant. Robert P.
Foster, FISHER & PHILLIPS, Atlanta, Georgia, for Appellee.
**ON BRIEF:** Geoffrey J. Moul, MURRAY, MURPHY,

MOUL & BASIL, Columbus, Ohio, for Appellant. Robert P.
Foster, Rebecca J. Jakubcin, FISHER & PHILLIPS, Atlanta,
Georgia, for Appellee.

—————

## OPINION

—————

KENNEDY, Circuit Judge. Plaintiff appeals from the grant
of summary judgment to his former employer, defendant
Crown Motor Company, Inc. ("Crown"), on his claims of
illegal retaliation in violation of Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Ohio
Revised Code § 4112.02 and of intentional infliction of
emotional distress in violation of Ohio common law. For the
reasons explained below, we REVERSE the district court's
award of summary judgment to defendant on plaintiff's
federal and state claims of illegal retaliation, AFFIRM
summary judgment to defendant on plaintiff's state claim of
intentional infliction of emotional distress, and REMAND to
the district court for proceedings consistent with this opinion.

We review the district court's order granting summary
judgment *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689
(6th Cir. 1999). Summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with affidavits, if any, show that
there is no genuine issue of material fact and that the moving
party is entitled to a judgment as a matter of law." Fed. R.
Civ. P. 56(c). We must accept the non-moving party's
evidence, and draw all justifiable inferences in his favor.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). A
"material" fact is one "that might affect the outcome of the
suit." *Id.* at 248. A "genuine" issue exists if "the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Id.*

## I. Illegal Retaliation Claims

### A. Facts

Defendant Crown, which sells and repairs cars, hired plaintiff Abbott, a white male, as an automotive technician in June of 1995.[1] In March of 1996, Crown hired Donald Crump, a black male, as an automotive detailer. Scott Morrison, the Parts & Services Director, and Jim Purnell, the work dispatcher, both white males, were Crump's and plaintiff's immediate superiors. On July 8, 1997, Crump filed a complaint with the Ohio Civil Rights Commission (OCRC)/Equal Employment Opportunity Commission (EEOC), alleging that, since June 2, 1997, Purnell and Morrison had been harassing him and that Purnell had denied Crump work hours. With respect to the harassment, in particular, Crump alleged that Purnell used various racial epithets and that Morrison told a joke that disparaged blacks. Crump informed plaintiff that Crump had identified plaintiff to the OCRC/EEOC as a witness to the race discrimination, and that the OCRC might contact plaintiff. After the OCRC served Crump's formal charge upon Crown, Morrison launched an investigation into Crump's allegation that Purnell had racially harassed him. Crump testified that, upon receiving a copy of Crump's OCRC/EEOC charge, Morrison advised Crump that he had better watch his back. Plaintiff testified that Crump had warned him that Morrison had told Crump that Morrison would retaliate against anyone who was trying to disrupt the shop's operations.

About a week after receiving the charge, Morrison held a Service Department meeting at which he announced that allegations of discrimination had been made and asked any

---

[1] Under Federal Rule of Appellate Procedure 10, we must disregard parties' references to evidence that is not in the district court record. While that record includes plaintiff's deposition, it includes only those limited portions of Crump's and Morrison's depositions that are attached to the summary judgment memoranda.

witnesses to come forward. On September 22, 1997, plaintiff informed Morrison that he had witnessed Purnell's use of racial epithets and that he would testify to it in a court of law in support of Crump's race discrimination claim against Crown. According to plaintiff, while he was discussing his grievances with Morrison, Morrison was "very attentive, very abiding," in "some agreement" with plaintiff, and "pretty well shocked" about Purnell's use of racial slurs. Yet, plaintiff also described Morrison, after he had learned that plaintiff would testify about the discrimination, as being "amazed, befuddled, surprised, disbelieving," gritting his teeth, and expressing contempt. Morrison told plaintiff that he would take care of the situation. Morrison fired Purnell the following day. In March of 1998, approximately eight months after filing the charge, Crump moved to withdraw his OCRC/EEOC charge against Crown. According to OCRC's letter granting his withdrawal, dated March 12, 1998, Crump no longer wished to pursue the matter and had stated "that the racial harassment and derogatory remarks have ceased." Sometime in July of 1998, approximately eleven months after Morrison fired Purnell, Crump tendered his resignation to Crown, subject to two weeks' notice, and took a job with Coca Cola at a higher rate of pay. The parties dispute whether Crown's alleged retaliation against Crump was a factor in his resignation.

On August 28, 1998, defendant discharged plaintiff. Plaintiff asserts that his discharge was in retaliation for his having come forward to support Crump's discrimination claim. In support of that theory, he points to various statements made to Crump indicating Crown's continued displeasure with Crump's having filed the OCRC/EEOC charge as well as Morrison's continued discriminatory treatment of Crump. Plaintiff testified that, approximately one month before his termination, Millard Ripley, Crown's Managing Partner, held "a shop meeting at which he threatened that it was inappropriate for employees to take complaints outside of Crown Motors." Crump also testified that Ripley had stated that "all complaints regarding

employment should be made internally." According to Crump, after that meeting, which occurred on the day that Crump tendered his resignation, Ripley told Crump that he should not have gone behind Crown's back to file the OCRC charge and that Crump should have taken his complaint directly to Morrison instead. In an affidavit filed before Crump's deposition, Crump stated that, around his last day of employment, Morrison reminded Crump that he had told Crump that he would "get back at those who had supported the charge of discrimination against he and Crown."

The parties dispute many of the events preceding the date of plaintiff's termination. For approximately four weeks before plaintiff was fired, the lift in plaintiff's bay was out of commission. Many of plaintiff's assigned jobs required the use of a lift. Morrison told plaintiff that he should wheel his tool box to a substitute lift across the garage, and that his lift would be repaired. Morrison testified that plaintiff complained to him every day about the lift, and was carting his tool box back and forth and "throwing his tools around." Plaintiff testified that he complained only about once a week, and that he never threw his tools. Morrison testified that plaintiff had engaged in other disruptive conduct, which plaintiff denies. The parties also dispute what occurred on the date that plaintiff was fired. Morrison testified that plaintiff demanded that he be sent home with pay until the lift was repaired. Crown later informed the Bureau of Worker's Compensation that it had discharged plaintiff for insubordination. Plaintiff testified that, at the end of the fourth week, Morrison had promised that the lift would be repaired over the weekend. On Monday when it was still broken, plaintiff went to Morrison's office to find out when the lift would be repaired. Plaintiff testified that Morrison immediately became angry and asked whether plaintiff wanted Morrison to fix the lift. Plaintiff answered that he did not expect Morrison to fix it, but that he had to come to Morrison about it. Morrison then replied that they did not want plaintiff to work there any more, stating that he had already spoken with Ripley and received his permission to

discharge plaintiff. Morrison told plaintiff that he was firing him for bringing "the morale of the shop down." Plaintiff denies ever raising his voice to Morrison; threatening Morrison; expressing "rage or any other emotions that could be considered confrontational"; storming into Morrison's office; slamming the door; or giving Morrison an ultimatum to get the lift "fixed or else." On the day after Morrison fired plaintiff, Greg Wade, whom Morrison had hired earlier in June of 1998, had started work in the service bay made available only by plaintiff's termination. According to plaintiff, a few days after his termination, Ripley informed plaintiff that Morrison had fired him because plaintiff had put his nose in other people's business. Plaintiff testified that he understood this to mean that Morrison fired him for his involvement in Crump's discrimination complaint because "[t]hat was the only thing that . . . [plaintiff] had his nose in."

Plaintiff also contends that, after his unlawful termination, Morrison further retaliated against plaintiff for his involvement in Crump's OCRC/EEOC charge by giving a negative recommendation of him to a potential employer. Crown conceded that Morrison had informed a potential employer that he had terminated plaintiff "during the busy season" and that plaintiff "was not eligible for rehire." As Morrison admitted, it violated company policy to provide such a reference.[2]

### B. Analysis

"Summary judgment is proper where the plaintiff fails to present evidence sufficient to create a dispute of material fact with respect to an element of his retaliation claim." *Mullhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002). Because the Ohio Supreme Court has held that an action under Ohio

---

[2]Crown's employee handbook provides that the employee "must consent in writing to authorize [Crown's] responses" to inquiries from prospective employers, and that, absent such consent, Crown's policy is "simply to confirm the term of employment and job title."

Revised Code § 4112 mirrors that under Title VII, *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 196 (Ohio 1981), we will analyze plaintiff's state and federal claims of illegal retaliation solely under Title VII. 42 U.S.C. § 2000e-3(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell-Douglas* framework. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000). Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action. *See Laderach*, 207 F.3d at 829. "[D]irect evidence proves the existence of a fact without any inferences or presumptions." *Norbuta v. Loctite Corp.*, 181 F.3d 102, *2 (6th Cir. 1999). Here, plaintiff's tendered evidence is not direct because, even if it were believed, it would not require the conclusion that defendant unlawfully retaliated against plaintiff; rather, one could draw that conclusion only by making a series of inferences arising from plaintiff's evidence. Consequently, plaintiff must establish a *prima facie* case of unlawful retaliation for his Title VII action to lie.

To establish a *prima facie* case of unlawful retaliation under Title VII, the plaintiff must demonstrate by a preponderance of the evidence that: 1) he engaged in activity that Title VII protects; 2) defendant knew that he engaged in

this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists. *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "The burden of establishing a *prima facie case* in a retaliation action is not onerous, but one easily met." *Nguyen*, 229 F.3d at 563; *see also EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (Establishing a *prima facie* case entails a lower burden of proof than that which is required to win a judgment on the merits.). "After proving the existence of a *prima facie* case, the burden [of production] shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." *Nguyen*, 229 F.3d at 562. If the defendant meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). If the plaintiff demonstrates that the defendant's proffered, non-discriminatory reason is a pretext, then the fact finder *may* infer unlawful retaliation. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir. 1998); *Virostek v. Liberty Township Police Dep't/Trustees*, 14 Fed.Appx. 493, 504, 2001 WL 814933, at *7 (6th Cir. 2001). Throughout the entire *McDonnell-Douglas* framework, the plaintiff bears the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993).

Here, plaintiff has established the first three prongs of a *prima facie* case of unlawful retaliation. Title VII broadly protects an employee's participation "in any manner in an investigation, proceeding, or hearing under . . . [Title VII]." 42 U.S.C. § 2000e-3(a); *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir. 1989) ("The 'exceptionally broad protection' of the participation clause

extends to persons who have 'participated in any manner' in Title VII proceedings."). This Circuit "has not directly addressed the question of whether participation in internal investigations constitutes protected activity under the participation clause." *Warren v. Ohio Dep't of Public Safety,* 24 Fed.Appx. 259, 265, 2001 WL 1216979, at *3 (6th Cir. 2001); *see Davis v. Rich Prods. Corp.,* 11 Fed.Appx. 441, 445, 2001 WL 392036, at *3 (6th Cir. 2001). Today, we hold that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge. *See EEOC v. Total Sys. Serv., Inc.,* 221 F.3d 1171, 1174 n.2 (11th Cir. 2000) (The participation clause protects an employee's activities that "occur in conjunction with or after the filing of a formal charge with the EEOC," not an employee's participation "in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC"; at a minimum, an employee must have filed a charge with the EEOC or otherwise instigated proceedings under Title VII.); *Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999) (For activity to receive protection under the participation clause, there must be, at a minimum, "factual allegations of discrimination against a member of a protected group and the beginning of a proceeding or investigation under Title VII."); *Vasconcelos v. Meese,* 907 F.2d 111, 113 (9th Cir. 1990) (Plaintiff did not engage in protected activity when she lied during an Internal Affairs Investigation by the Marshal's Service, not during any EEOC investigation, because Title VII protects only "[a]ccusations made in the context of charges before the Commission."). Plaintiff thus established that he engaged in protected activity when, in Crown's internal investigation into the EEOC charge pending against it, he notified Morrison that he had witnessed Purnell's racial discrimination and would testify to it in a court of law. Since plaintiff made this disclosure to Morrison, Crown knew of this participation. After plaintiff engaged in the protected activity, Crown terminated plaintiff and gave him a poor employment reference, thereby taking employment actions adverse to him.

*See Hollins v. Atl. Co.,* 188 F.3d 652, 662 (6th Cir. 1999) (holding that "a plaintiff must identify a materially adverse change in the terms and conditions of his employment to state a claim for retaliation under Title VII," and suggesting that termination would be a sufficient, adverse employment action); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 339, 346 (1997) (holding that the term "employees," as used in Title VII's anti-retaliation provision, includes former employees bringing suit for retaliatory, post-employment actions, such as a negative reference to a potential employer).

To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects. *See Nguyen*, 229 F.3d at 563; *Avery Dennison,* 104 F.3d at 861 (holding that a plaintiff need only present "'sufficient evidence to raise the inference that her protected activity was the likely reason for the adverse action'" to establish the causation element). The district court granted summary judgment to defendant on plaintiff's unlawful retaliation claims on the ground that plaintiff had not presented sufficient evidence "to permit the inference that plaintiff would not have been fired but for his participation in Crump's OCRC charge" and, thus, that plaintiff had failed to demonstrate "a *prima facie* case of retaliatory discharge." In particular, the court relied on the fact that plaintiff was fired approximately eleven months after he disclosed that he would support Crump's discrimination charge. However, two of Crown's statements at or near plaintiff's discharge satisfy the element of causation. Crump's affidavit states that, on Crump's last day of work, Morrison advised Crump that Morrison would "get back at those who had supported the charge of discrimination against he and Crown." Crump's last day of work was July 26th, and plaintiff was fired on August 28th. In addition, plaintiff testified that, only a few days after Morrison terminated him, Ripley informed plaintiff that Morrison had fired plaintiff because he had put his nose

in other people's business. As plaintiff testified, he understood this to mean that Morrison fired him for his involvement in Crump's discrimination suit as "[t]hat was the only thing that . . . [he] had his nose in." These two pieces of evidence, construed in the light most favorable to plaintiff, create a genuine issue of material fact as to whether Crown would have terminated plaintiff had plaintiff not participated in Crump's EEOC charge. Furthermore, Morrison gave plaintiff what a reasonable juror could construe as a negative job reference in violation of company policy. This creates a genuine issue of material fact as to whether Crown would have given plaintiff such an unfavorable job recommendation had plaintiff not engaged in protected activity. In sum, we find that plaintiff has offered evidence to establish a *prima facie* case of unlawful retaliation.

Although defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff–plaintiff's alleged insubordination and threatening behavior regarding his broken lift–, both plaintiff's testimony and that of another witness dispute this proffered reason. Thus, summary judgment for defendant on plaintiff's retaliatory discharge claim was improper. *See Manzer*, 29 F.3d at 1078 (holding that plaintiff need not introduce evidence in addition to his *prima facie* case to demonstrate pretext and to create a permissible inference of illegal discrimination where he demonstrates that: 1) the proffered reason has no basis in fact–i.e. it never actually happened; or 2) the reason was insufficient to motivate the termination–i.e. the employer did not terminate another employee engaging in conduct similar to that which the employer contends motivated plaintiff's termination); *Kline,* 128 F.3d at 344 (holding that, if plaintiff demonstrates that defendant's proffered, non-discriminatory reason is a pretext, then the fact finder *may* infer unlawful retaliation). Regarding plaintiff's claim of unlawful retaliation based upon a negative employment reference, defendant did not proffer a legitimate, non-discriminatory reason for this adverse employment action so as to meet its

burden of production.[3] Consequently, having no duty to show pretext at this point, plaintiff has not failed to create a genuine issue of material fact "with respect to an element of his retaliation claim" so as to render summary judgment for defendant proper. *Mullhall*, 287 F.3d at 551. In sum, we REVERSE the district court's award of summary judgment to defendant on plaintiff's state and federal claims of unlawful retaliation.

## II. Intentional Infliction of Emotional Distress Claim

Plaintiff claims that defendant intentionally inflicted severe emotional distress upon plaintiff when defendant, knowing of plaintiff's poor heart condition, terminated him and then gave him a negative job reference in retaliation for plaintiff's involvement in Crump's discrimination charge. Under Ohio law, a cause of action for intentional infliction of emotional distress may lie only where defendant's conduct is "extreme and outrageous" in that it goes "beyond all possible bounds of decency," is "atrocious," and is "utterly intolerable in a civilized community"; conduct that is merely malicious, aggravated, or intentional or that entails an intent that is tortious or criminal is insufficient to render it actionable. *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983). Even assuming the truth of plaintiff's allegations, no rational juror could find that this alleged conduct rises to the level of "extreme and outrageous" under Ohio case law. *See McNeil v. Case Western Reserve Univ.*, 664 N.E.2d 973, 977 (Ohio Ct. App. 1995) (finding insufficiently outrageous as a matter of law defendant's alleged conduct of harassing plaintiff to

---

[3]We note that it is unclear whether defendant sought summary judgment on plaintiff's claim of unlawful retaliation based on a negative job reference as its memorandum in support of summary judgment discusses only plaintiff's retaliatory discharge claim. Although the district court granted defendant summary judgment on *all* of plaintiff's claims, presumably including plaintiff's claim of unlawful retaliation via a negative job reference, the district court analyzed only plaintiff's retaliatory discharge claim.

retire, urging plaintiff's daughter to persuade plaintiff to retire, leading co-workers to believe that plaintiff had retired when she simply had taken a few days off, and intentionally locking her "out of the room in which she kept her personal belongings"); *Kerr v. Proctor & Gamble*, No. 88AP-629, 1989 WL 11961, at **1-4 (Ohio Ct. App. 1989) (holding that defendant's alleged conduct was not "extreme and outrageous" as a matter of law where defendant made daily hostile phone calls to plaintiff belittling her and threatening that plaintiff would receive a poor job recommendation and no health insurance unless she resigned). Thus, we affirm the district court's award of summary judgment to defendant on plaintiff's state claim of intentional infliction of emotional distress.

In sum, we REVERSE the district court's award of summary judgment to defendant on plaintiff's state and federal claims of unlawful retaliation, AFFIRM the district court's award of summary judgment to defendant on plaintiff's state claim of intentional infliction of emotional distress, and REMAND for further proceedings consistent with this opinion.