**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0807n.06
Filed: September 29, 2005

**No. 04-6355**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DIANNE B. PROFFITT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| METROPOLITAN GOVERNMENT OF | ) | MIDDLE DISTRICT OF TENNESSEE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| JULIE WILLIAMS, Dr.; PEDRO GARCIA, | ) | |
| Dr.; GENE HUGHES, Dr., | ) | |
| | ) | |
| Defendants. | ) | |

Before: KENNEDY, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. In 2002, Plaintiff-Appellant Dianne Proffitt, a twenty-nine-year

employee of the Metropolitan Government of Nashville and Davidson County Board of Education,

participated in a sexual harassment investigation. Not long thereafter, she lost her job and though

rehired in a different position, suffered a considerable pay reduction. She sued the Metropolitan

Government of Nashville and Davidson County, Tennessee, (the "Metropolitan Government") and

Drs. Julie Williams, Pedro Garcia, and Gene Hughes under Title VII of The Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn.

Code Ann. § 4-21-101 *et seq.*, for unlawful retaliation. The district court granted summary judgment to each of the defendants. Proffitt appeals the grant of summary judgment to the Metropolitan Government. For the following reasons, we affirm.

I

Proffitt worked for the Metropolitan Board of Education as a teacher, a principal, and, following her retirement in June 2000, as a part-time employment relations specialist in the Human Resources Department. In her final position, she received the same effective wages that she received at the end of her career as a principal, $38.76 per hour, and she also drew her pension.

Dr. Gene Hughes was the director of the Employee Relations Division of the Human Resources Department from August 2001 through the spring of 2003. In late May 2002, the Metropolitan Government initiated an investigation into sexual harassment allegations against him based on information conveyed to one of its attorneys by Tamara Sadler, another employee. Sadler gave an account of inappropriate, sexually-suggestive behavior that included conduct recounted to her by Proffitt. Proffitt then was interviewed as part of the investigation on June 24, 2002.

On June 3, 2002, just as the Hughes investigation was getting under way, Dr. Julie Williams became assistant superintendent for human resources. Hired in the spring, Dr. Williams had thirty-two years experience in high schools, including sixteen years as an administrator and ten as a principal. She planned to reorganize the Human Resources Department. Soon after her arrival, she

asked the directors under her supervision to describe the job responsibilities of each of the employees and requested that each employee complete a form detailing his or her responsibilities. Proffitt completed one of these forms and submitted it to Williams.

Williams ultimately decided to eliminate Proffitt's position; Proffitt was earning $54,000 per year, significantly more than others at her job level, while only working part-time. Williams notified Proffitt of her termination on June 28, 2002, believing (according to her testimony) that she had to provide Proffitt notice before the end of the fiscal year on June 30. Proffitt received the notice four days after her interview in connection with the Hughes investigation.

After her termination, Proffitt obtained work with the summer-school program. She was paid the same $38.76 rate that she had received in the Human Resources Department—though allegedly in error. The chief instructional officer of the Metropolitan Nashville public schools testified that all part-time summer-school employees, whether they were principals, teachers, or administrators, were to be paid a set rate of $15.04 from state-extended contract money, and that the person who had offered Proffitt the summer-school position did not have the authority to approve a higher rate. In September 2002, after Proffitt had deposited her final paycheck, Williams stopped payment on the check and sought to verify the hours that Proffitt had worked. Williams ultimately approved Proffitt's hours, but compensated her at the lower rate of $15.04 and sought repayment of amounts that had been overpaid.

No. 04-6355
*Proffitt v. Metropolitan Gov't. of Nashville and Davidson Cty., Tenn.*

On June 30, 2003, Proffitt filed suit, asserting claims of sexual harassment and retaliation in violation of Title VII and the THRA. The Metropolitan Government filed a counterclaim for Proffitt's overpayment. After discovery, the defendants moved for summary judgment and Proffitt moved for summary judgment on the counterclaim. The district court granted summary judgment to the defendants on all counts, dismissed the counterclaim for want of subject-matter jurisdiction, and dismissed Proffitt's motion for summary judgment as moot. Proffitt appeals the grant of summary judgment to the Metropolitan Government on the Title VII and THRA retaliation claims.

II

We review the district court's grant of summary judgment de novo. *United Rentals (N. Am.), Inc. v. Keizer*, 355 F.3d 399, 405 (6th Cir. 2004). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate if a party with the burden of persuasion fails to make a showing sufficient to establish an essential element of that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The familiar *McDonnell Douglas* burden-shifting framework governs both Title VII and THRA retaliation claims premised on circumstantial evidence. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003); *Miller v. City of Murfreesboro*, 122 S.W.3d 766, 776 (Tenn. Ct. App. 2003). To establish a prima facie case of retaliation, Proffitt must show that: (1) she engaged

in activity protected by Title VII; (2) the Metropolitan Government knew that she engaged in the protected activity; (3) the Metropolitan Government subsequently took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Abbott*, 348 F.3d at 542. The burden then shifts to the Metropolitan Government "to articulate a legitimate, non-retaliatory explanation for the action." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). If the Metropolitan Government does so, Proffitt must demonstrate that the proffered explanation is pretextual—either by showing that it "(1) has no basis in fact, (2) did not actually motivate the [Metropolitan Government's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

III

We assume, without deciding, that Proffitt's participation in the Hughes investigation constituted "protected activity" for purposes of Title VII. We held in *Abbott* that "Title VII protects an employee's participation in an employer's internal investigation . . . where that investigation occurs pursuant to a *pending* EEOC charge." 348 F.3d at 543 (emphasis added). And, because we reject Proffitt's appeal on alternate grounds, we assume for the sake of argument that the "'exceptionally broad protection'" of Title VII's participation clause reaches her actions. *Id.* (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989)).

Proffitt challenges as unlawful retaliation both her termination and the placement of the stop-payment order on her final paycheck.

## A. Proffitt's Termination

The district court correctly granted summary judgment to the Metropolitan Government on Proffitt's claim that her termination constituted unlawful retaliation because Proffitt failed to present evidence sufficient to create a genuine factual issue as to whether Williams knew of Proffitt's protected activity when she terminated her. As this court reiterated in *Mulhall v. Ashcroft,* the decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation. 287 F.3d 543, 551 (6th Cir. 2002). We noted that "[i]n most Title VII retaliation cases, the plaintiff will be able to produce direct evidence that the decision making officials knew of the plaintiff's protected activity," because "the adverse action will be taken by the same supervisor to whom the plaintiff has made complaints in the past." *Id.* at 552. But "direct evidence of such knowledge or awareness is not required, and . . . a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Id.*; *see*, *e.g.*, *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999) (finding a sufficient circumstantial case for knowledge of plaintiff's protected activity where plaintiff was the only one of several similarly-situated black officers to receive remedial action); *Polk v. Yellow Freight System, Inc.*, 876 F.2d 527, 531 (6th Cir. 1989) (finding a sufficient circumstantial case for knowledge where defendant told plaintiff, "I know where you've been," after plaintiff returned from the state civil

rights department). Where the decisionmaker denies having knowledge of the alleged protected activity, the plaintiff must do more than "offer[] only conspiratorial theories . . . or 'flights of fancy, speculations, hunches, intuitions, or rumors.'" *Mulhall,* 287 F.3d at 552 (quoting *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)).

Williams testified that she did not know of Proffitt's participation in the Hughes investigation when she terminated Proffitt on June 28, 2002, and notes from a meeting two days later with the person investigating Hughes—stating, "Proffitt termination mid-investigation / did not know about investigation"—corroborate her testimony. Proffitt offers no direct evidence of Williams's knowledge in rebuttal. Instead, she relies on a string of inferences—that Hughes suspected Proffitt to be a witness in the investigation and *may have told* Williams's supervisor of that suspicion; that Williams's supervisor, upon hearing this, *may have warned* Williams not to retaliate against Proffitt; and that Williams's supervisor, in doing so, *may have informed* Williams of Proffitt's protected activity. We find Proffitt's evidence too speculative to support the inference that Williams knew of her protected activity when she terminated her.

### B. Stop-Payment Order on Proffitt's Final Paycheck

The district court also correctly granted summary judgment on Proffitt's claim that the placement of a stop-payment order on her final summer-school paycheck constituted unlawful retaliation. Williams was told about Proffitt's participation in the Hughes investigation on June 30, 2002, so she knew about the protected activity when she stopped Proffitt's paycheck in September.

And we assume, without deciding, that Proffitt sufficiently demonstrated a "causal connection" between her protected activity and the stop-payment order to establish a prima facie case of retaliation. We nonetheless affirm the district court's judgment because the Metropolitan Government put forth a legitimate, non-retaliatory explanation for its action, and Proffitt offered no evidence of pretext.

Williams averred that she stopped payment on Proffitt's check to audit Proffitt's calculation of hours and to determine why Proffitt had billed at a rate more than double the rate approved for summer-school employees. Proffitt responds that she was historically paid $38.76 per hour for her summer-school work, and that, in the opinion of the vice president of the teacher's union, Proffitt's wages should not have been limited to $15.04 per hour. Neither piece of evidence, however, rebuts the testimony of the chief instructional officer of the Metropolitan Nashville public schools that all part-time summer-school employees were to be paid a set rate of $15.04. And neither suggests that Williams's proffered explanation for her action lacked a basis in fact, did not actually motivate Williams's conduct, or was insufficient to warrant Williams's conduct. *See Dews*, 231 F.3d at 1021. We conclude that the district court correctly found no triable issue as to whether the Metropolitan Government's explanation for its conduct was pretextual and correctly granted summary judgment to the Metropolitan Government on Proffitt's claim that the placement of the stop-payment order constituted unlawful retaliation.

IV

We thus affirm the district court's grant of summary judgment to the Metropolitan Government.