NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0897n.06

No.  10-5937

FILED

Aug 14, 2012

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JANICE L. JACKSON, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE WESTERN |
| BOARD OF EDUCATION OF THE MEMPHIS | ) DISTRICT OF TENNESSEE |
| CITY SCHOOLS OF MEMPHIS, TENNESSEE; | ) |
| MARGARET MCKISSICK-LARRY; KIMKEA | ) |
| HARRIS, | ) |
| | ) |
| Defendants-Appellees. | ) |

Before:      **KEITH, BOGGS, and MOORE, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.**  Plaintiff-Appellant Janice Jackson appeals a district

court order granting summary judgment to Defendants-Appellees in her Title VII action for

retaliation.  Jackson worked as a teacher's assistant at Avon Lenox School in Memphis, Tennessee.

Jackson claims that as a result of her opposition to what she alleged was racial discrimination by

Defendant-Appellee Margaret McKissick-Larry, she was transferred to another school site where she

earned less income.  The district court found that because Jackson's opposition to an admonishment

by McKissick-Larry was unreasonable, she could not establish a prima facie case of retaliation.  For

the following reasons, we AFFIRM.

I.

Janice Jackson, an African-American female, has been employed as a teacher's assistant by

the Board of Education of the Memphis City Schools since January 2004.  From January 2004 until

October 20, 2006, Jackson worked at Avon Lenox School, a Memphis city school that serves only students with special needs between the ages of 14 and 21 years. During Jackson's assignment at Avon Lenox School, Margaret McKissick-Larry, also an African-American female, served as the principal. The staff at Avon Lenox School was 97% African American and only two of the thirty-one teacher's assistants were White.

On September 19, 2006, McKissick-Larry approached Jackson in the hall and admonished Jackson for being out of the classroom. McKissick-Larry instructed Jackson that she needed to be in the classroom and advised Jackson to monitor her breaks. McKissick-Larry also expressed concerns about a possible inappropriate personal relationship with a male co-worker, Terry Sudduth. Jackson claimed that, at the time of the admonishment, she was en route to the laundry room to pick up clothes for one of the students in her classroom. Prior to September 19, 2006, McKissick-Larry had never criticized Jackson for spending an excessive amount of time outside her assigned classroom or with Sudduth.

The next day, on September 20, 2006, Jackson drafted a personal letter addressed to McKissick-Larry as a written response to McKissick-Larry's verbal admonishment. In her letter, Jackson opined that the confrontation was "unprofessional and improper." Jackson also indicated that she felt unfairly singled out and that her White co-workers were allowed "duty[-]free breaks," while African-Americans were "criticized for taking breaks." To Jackson, this alleged discriminatory treatment constituted "a clear violation of the Civil Rights Act of 1964."

In response to Jackson's letter, McKissick-Larry wrote a memorandum ("memo") dated October 3, 2006, in which she expressed concerns about Jackson's professional conduct. The

concerns cited in the memo generally involved: (1) the relationship between Jackson and Sudduth; (2) Jackson visiting other classrooms; (3) propping open the outside doors to the building; (4) an incident in which Jackson photographed a teacher curling another teacher's hair in a classroom; and (5) having unauthorized conferences with parents.

McKissick-Larry noted in her memo that "[o]n numerous occasions [she has] discussed with [Jackson] the issue of public displays of a very private and personal social relationship." She wrote that Jackson and Sudduth—whom McKissick-Larry referred to as "your friend"—spent "an inordinate amount of time talking in the hall," "sitting on the bench," and "at [their] classroom doors." Jackson denied spending an inordinate amount of time talking to Sudduth in the hall or taking excessive breaks with him.

The second concern addressed in McKissick-Larry's memo was Jackson visiting unassigned classrooms during instructional time. McKissick-Larry described this as "a serious problem." The memo alleged that on one occasion when Jackson was visiting a classroom, she violated the school's nutritional policy by giving snacks to a student. Jackson claimed that it was another teacher's assistant who gave the student trail mix. Jackson further contended that she was not conducting a "classroom visit," but rather discussing a pertinent matter with the transportation coordinator.

Third, the memo expressed a concern that Jackson "compromised the security of the building" by violating the school policy that requires that all exterior doors remain closed. McKissick-Larry's memo alleged that Jackson either opened an exterior door and left it open or found an exterior door open and chose not to close the door. At Avon Lenox School a door propped open can create a safety and security issue since students confronted with an open door can either

flee from the school or simply walk out the door not realizing the potential for danger. Jackson acknowledged that a door was propped open, but denied being the one who propped the door open. Jackson claimed that she was just outside the door using her cell phone, and the door was already propped open when she exited.

The fourth concern involved an incident in which Jackson photographed two teachers, one of whom was styling the other's hair in the classroom using a hot-roller set. This incident occurred in April 2006, while McKissick-Larry was absent. McKissick-Larry's memo expressed a concern that the photograph was sent to the Executive Director of the Division of Exceptional Children and Health Services, Dr. Partricia Toarmina, only after Jackson was reprimanded, six months later, in September 2006. The memo further expressed concerns that the photograph was misleading and violated the privacy rights of the teachers who were photographed. Jackson claimed that she originally sent the photographs to Dr. Toarmina in April 2006, and only resent the photographs to Dr. Toarmina upon her request in September 2006. McKissick-Larry was unaware of the April 2006 incident until she received an email from Dr. Toarmina on September 25, 2006. Upon witnessing the teacher rolling another teacher's hair, Jackson reported the incident to the then-acting principal, Juanita Voss, who did not inform McKissick-Larry of the incident.

The final concern expressed in McKissick-Larry's October 3 memo involved Jackson's alleged unauthorized conferences with parents. The memo stated that McKissick-Larry discourages a teacher's assistant from holding conferences with parents. McKissick-Larry believed that conferencing with parents is the role of the teacher. The memo admonished Jackson to "never initiate a conversation where the teacher's credibility is attacked." Jackson admitted that, on more

than one occasion, she had discussions with parent Sheila Eastling about her son, Darien Campbell, who was a student at Avon Lenox School, but Jackson denied that she had any inappropriate "conference" with a parent.

Notwithstanding the criticism and concerns expressed in McKissick-Larry's memo, the memo also applauded Jackson's performance. The memo stated, "You will notice that very little has been said regarding your classroom performance. I am of the opinion that you have a lot to offer the classroom and students . . . . [I]t appears that other concerns have taken priority and are shadowing your good work with the classroom with the students to which you are assigned."

On October 3, 2006, McKissick-Larry met with Jackson and Memphis Education Association representative Tom Marchand to discuss the issues raised in McKissick-Larry's memo. Shortly after the meeting, Jackson wrote a memo titled: "Response to the Oct 3, 2006 Meeting." In her memo, Jackson rebutted the concerns and allegations outlined in McKissick-Larry's October 3, 2006 memo. Jackson also alleged that "[a] hostile work environment has been created."

On October 11, 2006, McKissick-Larry wrote a memo to Labor Relations Administrator Kimkea Harris opining that Jackson "should be moved to another site" and "[g]etting off to a new start will help her get back on target." On October 17, 2006, Jackson and Marchand met with Harris to discuss the allegations made in McKissick-Larry's memo. During that meeting, Jackson denied most of the allegations contained in the memo. In Marchand's notes of the meeting, he indicated that Harris informed Jackson that the Board viewed her letter quoting the Civil Rights Act as a threat. Marchand's notes also indicated that Harris advised Jackson to not use the term "hostile environment" or "retaliation." In a letter dated October 19, 2006, Harris informed Jackson that

discipline was warranted.  Harris also stated that the letter "shall serve as a written reprimand and . . . will be placed in [Jackson's] file."  The letter informed Jackson that she would be "transferred to another location."  Finally, the letter warned that "any future infractions of rules, policies, or procedures of the Memphis City Schools or any referral to the Division of Labor and Employee Relations may lead to more stringent disciplinary action."

Jackson was given a choice concerning which school she transferred to, and she selected to transfer to Wooddale High School.  Jackson contends that there were no transfer options available for a school that would provide her the same opportunity to earn the overtime compensation that she received at Avon Lenox by escorting students to and from school on a bus.  Jackson's hourly rate of pay as a teacher's assistant did not change after she was reassigned to Wooddale High School; however, she contends that her compensation was significantly reduced as the result of her reassignment because she was unable to escort students to and from school at Wooddale.  Jackson claims that, as a result of the reduction in her earnings, she became financially insolvent and was forced to seek wage-earner protection under Chapter 13 of the Bankruptcy Code.

Jackson initiated this action on July 26, 2007, alleging that McKissick-Larry had unlawfully retaliated against her in response to her letter dated September 20, 2006.  Jackson's complaint alleged retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"); the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-301 *et seq.*; and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983").

On January 7, 2010, the district court entered an order granting summary judgment in favor of the defendants on all claims. The district court found that the anti-retaliation clause of Title VII was not implicated because Jackson did not show a reasonable and good-faith belief that her opposition, here in the form of the September 20, 2006 letter, was a result of unlawful discrimination. The court then concluded that Jackson was unable to establish a prima facie case of retaliation because she had not shown that she engaged in Title VII-protected activity.

II.

We review a district court's grant of summary judgment de novo. *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 656 F.3d 348, 351 (6th Cir. 2011). Summary judgment is required when the movant shows that "there is no genuine dispute as to any material fact" and he or she is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law will determine which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Id.* at 252. Rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.*

Jackson alleges that Defendants-Appellees unlawfully retaliated against her as a result of her September 20, 2006 letter. Jackson's claims arise under the anti-retaliation provisions of Title VII.[1] Title VII makes it unlawful for an employer to discriminate against an employee either because the employee "has opposed any practice made an unlawful employment practice" (referred to as the "opposition clause") or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]" (referred to as the "participation clause"). 42 U.S.C. § 2000e-3(a). "Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.'" *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (quoting 42 U.S.C. § 2000e-2). Because Jackson alleges that her letter was the basis for retaliation, and not her participation in a Title VII proceeding, we interpret her claim under the "opposition clause."

In order to establish a prima facie case under the opposition clause, the "[p]laintiff must meet the test of a slightly modified *McDonnell Douglas* framework." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). Plaintiff must show: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the employer; (3) the employer thereafter took

---

[1] Jackson's retaliation claims under THRA and § 1981 are governed by the same burden-shifting standards as the Title VII claims. Thus, the analysis and conclusions concerning the Title VII claims apply equally to parallel claims brought under THRA and §1981. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001); see also *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (plaintiff's failure to establish a Title VII prima facie case governs the outcome of § 1981 and THRA claims).

an adverse employment action against the employee; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* If the plaintiff establishes a prima facie case, then the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* The plaintiff then is required to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for retaliation. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). "Throughout the entire *McDonnell-Douglas* framework, the plaintiff bears the burden of persuasion." *Id.*

Jackson argues that Defendants-Appellees retaliated against her because of her opposition to alleged unlawful employment practices—namely, her opposition to discriminatory treatment of African-American teacher's assistants, as compared to the White teacher's assistants. The opposition clause does not protect all opposition activity. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (citation and quotation marks omitted). "Courts are required to balance the purpose of [Title VII] to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* (citation and internal quotation marks omitted). "The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition be based on 'a reasonable and good faith belief that the opposed practices were unlawful.'" *Johnson*, 215 F.3d at 579 (quoting *EEOC Compliance Manual*, (CCH) ¶ 8806); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (retaliation claim under Title VII defeated where no reasonable person would believe that the activity opposed by employee violated Title VII).

To makeout her a prima facie case, Jackson, bearing the burden of persuasion, was required to demonstrate by a preponderance of the evidence that she had a reasonable and good-faith belief that McKissick-Larry violated the law when she admonished Jackson for being out of the classroom on September 19, 2006. The district court concluded that Jackson failed to meet her burden by failing to show that her belief that McKissick-Larry discriminated on the basis of race to be reasonable. We agree.

Even under a view of the evidence in the light most favorable to Jackson, Jackson cannot show that McKissick-Larry acted with racial animus or discriminatory intent against African-Americans in reprimanding Jackson. On September 19, 2006, McKissick-Larry confronted Jackson in the hall and outside of her classroom. Although the parties dispute whether Terry Sudduth was with Jackson when McKissick-Larry decided to approach, there is no dispute that Jackson was not in her assigned classroom. McKissick-Larry instructed Jackson that she needed to be in the classroom and advised Jackson to monitor her breaks. McKissick-Larry then went on to express concerns about what some of the staff, including herself, perceived as "public displays of a very private and personal social relationship." McKissick-Larry felt a responsibility as the administrator to "express her concerns" and advise Jackson to "be more discreet in consideration of [her] own privacy and respect for the professional setting in which many of [the] displays were occurring."

In Jackson's letter to McKissick-Larry, she mentioned that co-workers of a different ethnic background, namely the two White teacher's assistants, were not reprimanded and enjoyed "duty[-]free breaks, while African American co-worker[s] [were] criticized for taking breaks." Jackson has not pointed us to any evidence that we could consider on summary judgment in support of her claim

that she reasonably believed that McKissick-Larry was discriminating against African Americans or treating them differently with respect to taking breaks.  Jackson has not proffered any evidence that the two White teacher's assistants similarly displayed a private and personal relationship at the school and then escaped reprimand by McKissick-Larry.   Even assuming that Jackson believed in good faith that McKissick-Larry's actions violated Title VII, no reasonable jury could find, based on the factual record developed below, that McKissick-Larry's reprimand on September 19, 2006, constituted a violation of Title VII.  To hold that opposition is reasonable when the employer is addressing an apparent and legitimate personnel matter in a way that does not explicitly or implicitly implicate Title VII, with no other testimony or evidence of racial discrimination, would hamper an employer's ability to address legitimate issues for fear that doing so could leave the employer vulnerable to liability under Title VII.

In support of Jackson's contention that her opposition was reasonable, Jackson highlights parts of her deposition and the deposition of another teacher, in which the two allege that McKissick-Larry made "racist statements."  Jackson alleges that McKissick-Larry stated that she does not "deal with Black doctors or dentists because Whites always go to school more."  These statements do not substantially assist Jackson in satisfying her burden to show that her opposition on September 20, 2006, was reasonable.  These statements, even if true, do not show that McKissick-Larry treated her African-American staff any differently than her White staff when she gave Jackson a verbal admonishment for being out of the classroom.  Further, there is no indication that these alleged comments were made at or near the time that Jackson was admonished.  The comments also do little in showing that McKissick-Larry harbored any racial animus toward her 97% African-American

staff. Jackson also alleges that McKissick-Larry distributed an "offensive magazine article," titled, "Why Do Black Women Despise Each Other?" Accepting Jackson's allegation that McKissick-Larry distributed this article to be true, we still find the use of this particular article as indicia of McKissick-Larry's racial hostility to be similarly flawed.

III.

Jackson has not shown that she reasonably opposed a protected activity, and she thus has not made a prima facie showing under the *McDonnell-Douglas* framework. We therefore AFFIRM the judgment of the district court.