**Michael CURTIS and Shayrn Bradley, Plaintiffs–Appellants,**

v.

**HANGER PROSTHETICS & ORTHOTICS, INC., Defendant–Appellee.**

No. 02–6265.

United States Court of Appeals, Sixth Circuit.

June 4, 2004.

Rehearing En Banc Denied Aug. 9, 2004.

Philip C. Kimball, Samuel G. Hayward, Adams, Hayward & Welsh, Louisville, KY, for Plaintiffs–Appellants.

Lisa H. Cassilly, Ashley D. Brightwell, Alston & Bird, Atlanta, GA, Eric J. Haner, Hargadon, Lenihan, Harbolt & Herrington, Louisville, KY, for Defendant–Appellee.

Before: DAVID A. NELSON, GILMAN, and ROGERS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a summary judgment for the employer in a retaliation case brought under Kentucky law. The plaintiffs sought to recover damages for employment actions allegedly taken as a result of their having blown the whistle on a manager who allegedly made a homosexual advance to the male plaintiff. The district court concluded that the plaintiffs had not established a prima facie case of retaliation and had failed to present sufficient evidence that the employer's explanation for its actions (a routine realignment of work responsibilities following a change in control of the company) was a pretext for illegal conduct.

If we assume, contrary to the district court's conclusion, that the plaintiffs established a prima facie case, the key question is whether a jury would have been entitled to infer from the plaintiffs' evidence that the employer's explanation was a pretext. We agree with the district court that the plaintiffs failed to produce the necessary evidence of pretext, and the challenged judgment will be affirmed on that basis.

I

The plaintiffs, Michael Curtis and Shayrn Bradley, worked in the downtown Louisville office of NovaCare, Inc., a firm engaged in the orthotics and prosthetics business. In the summer of 1999 NovaCare was taken over by Hanger Prosthetics & Orthotics, Inc., the defendant herein. As a result of the acquisition, Mr. Curtis and Ms. Bradley became employees of Hanger. Ms. Bradley remained the manager of the downtown office she had managed for NovaCare, but she began reporting to Scott Kerr, a man who oversaw all Hanger offices in the Louisville area. Mr. Curtis continued to work as a prosthetics

and orthotics assistant at the downtown office, reporting to Ms. Bradley.

Mr. Kerr introduced some changes in the management of Ms. Bradley's office during the fall of 1999. For one thing, he required the practitioners in the office to see patients on Thursdays, which had previously been set aside for meetings and paperwork. He also directed that the office be opened at 8:00 a.m., instead of 8:30, although Ms. Bradley obtained permission from a higher-level manager to adhere to the old hours. Ms. Bradley was unhappy with several of Kerr's initiatives, and she believed he had "an ego problem."

In October of 1999, while Mr. Curtis was working in the back area of the downtown office, Mr. Kerr entered the room and said, "Do you need a hand job?" Curtis responded in the negative. Kerr neither touched Curtis nor made any other comments of a sexual nature.

Mr. Curtis reported the incident to Ms. Bradley. She brought it to the attention of Karl Fillauer, a Hanger executive who had been her supervisor at NovaCare. This led to Ms. Bradley's receiving a telephone call from Hanger's regional vice president, Hugh Panton, who said he wanted to meet with Messrs. Kerr and Curtis. It was Mr. Panton who informed Kerr of Curtis' complaint.

Panton met with Kerr and Curtis, as planned, and there was a discussion of whether Curtis had misunderstood Kerr's question. Curtis said he only wanted assurances that the incident would not be repeated; Kerr promised it would not be. The meeting ended with an agreement "to basically move forward," and Curtis undertook to state in writing that he would not pursue the matter further. Later, however, he decided not to give such a statement.

Mr. Curtis and Ms. Bradley saw a diminution in their job responsibilities beginning in the fall of 1999. In Mr. Curtis' words, his "duties were reduced to . . . a basic tech level." He did substantially less measuring and fitting of prosthetics, tasks that involve direct contact with patients. Because of changes Mr. Kerr made to the shipping and receiving system in the office, Curtis' responsibilities in that area "dwindled." And because additional staff members were hired, Curtis found himself helping out less in the front office. He continued to fabricate orthotics and to assist in the fabrication of prosthetics, however, and his title, salary, and benefits did not change.

Ms. Bradley believed that her "job duties were being taken away one by [one]." On at least one occasion she was forced to reschedule patient appointments in order to accompany Mr. Kerr on a hospital visit. Kerr required Ms. Bradley to follow up with some of his patients, causing her to lose time in the office. He also asked her to perform tasks that were normally performed by nurses. Finally, he arranged for another employee to receive training in the specialized mastectomy work that Ms. Bradley had been performing. Ms. Bradley's salary and benefits, like those of Mr. Curtis, remained unchanged.

In February of 2000 a Hanger vice president, Wallis Farraday, met with Ms. Bradley and suggested (on the basis of information he attributed to Mr. Kerr) that she was not generating enough income through her work with mastectomy patients. Farraday asked her to prepare a résumé and a list of "ten good reasons" she should retain her job. Although Ms. Bradley was visibly upset, Farraday then insisted that she accompany him to a staff meeting. Mr. Farraday did not discharge

Ms. Bradley, nor did Mr. Kerr ever threaten to discharge her.

Shortly after the incident with Farraday, Ms. Bradley began to see a doctor because of symptoms attributed to job stress. On February 24, 2000, Ms. Bradley's physician faxed a note to Hanger recommending that Ms. Bradley take a leave of absence. The company accepted the recommendation, granting her leave with pay and benefits. At the doctor's suggestion, Ms. Bradley began to see a counselor. On March 14, 2000, the counselor cleared her to return to work in six days.

Instead of returning to work, Ms. Bradley submitted a letter of resignation effective March 20. The letter, directed to Mr. Kerr, attributed the resignation to Kerr's "constant harassing and badgering" and "the hostile environment that [he] created in [his] discrimination against [Ms. Bradley.]"

Mr. Curtis resigned about a month later. He told Mr. Kerr he was planning to pursue another career.

In May of 2001 Mr. Curtis and Ms. Bradley sued the company in state court. They alleged that they had been retaliated against for reporting Mr. Kerr's "hand job" question. The company removed the action to federal district court and moved for summary judgment.

The district court granted the motion, holding that Mr. Curtis and Ms. Bradley had not suffered an adverse employment action. (Such an "adverse action" is one element of the tort of retaliation under Kentucky law.) The court also held that the plaintiffs "offer[ed] no evidence that Hanger's legitimate business reason for the reduction of their duties—reorganization of a newly acquired office—is pretextual." Mr. Curtis and Ms. Bradley moved to vacate the judgment, but their motion was denied. They then perfected a timely appeal.

## II

The Kentucky Civil Rights Act makes it unlawful for an employer

> "to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's ... sex...." K.R.S. § 344.040.

The Act goes on to make it unlawful for any person

> "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter." K.R.S. § 344.280(1).

Under Kentucky law, claims of retaliation are analyzed in the same way as retaliation claims brought under Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* See, *e.g., Mountain Clay, Inc. v. Commonwealth,* 830 S.W.2d 395, 396 (Ky.App.1992).

"In an action under Title VII, the plaintiff may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir.2003) (referring to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Mr. Curtis and Ms. Bradley do not contend that they presented direct evidence of retaliation. They do claim to have presented a *prima facie* case under the *McDonnell Douglas* framework.

To establish a prima facie case of retaliation under *McDonnell Douglas,* a plaintiff

must show (1) that he engaged in activity protected by Title VII; (2) that the defendant was aware of the protected activity; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. See, *e.g.*, *Abbott*, 348 F.3d at 542; *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). The burden of establishing a prima facie case "is not onerous, but one easily met." *Nguyen*, 229 F.3d at 563. If the plaintiff meets this burden, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Abbott*, 348 F.3d at 542. The plaintiff must then demonstrate that the proffered reason is in fact a pretext for retaliation. See *id.*

We shall assume, without so deciding, that Mr. Curtis and Ms. Bradley established a prima facie case of retaliation. It is undisputed that they engaged in protected activity by reporting Mr. Curtis' complaint of sexual harassment, and it is likewise undisputed that the employer, as the recipient of the report, was aware of the protected activity. Diminution of the plaintiffs' job duties may have constituted an adverse employment action. See, *e.g.*, *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 797 (6th Cir. 2004) ("A reassignment without salary or work hour changes ... may be an adverse employment action if it constitutes a demotion evidenced by ... significantly diminished material responsibilities...."). Evidence that reduction of the plaintiffs' duties commenced soon after Mr. Curtis lodged his complaint and Ms. Bradley reported it to Mr. Fillauer may be sufficient to show a causal connection between the two events. See, *e.g.*, *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004). It is true that Ms. Bradley was not the object of Mr. Kerr's unwelcome overture, but it would

not be unnatural for Mr. Kerr to be embarrassed that she should have been made aware of the incident. Human nature being what it is, someone in Mr. Kerr's position might have wished to assuage his embarrassment by arranging for the departure of a woman who was privy to information of the sort reported by Mr. Curtis.

The employer, however, articulated a legitimate, non-discriminatory reason for its treatment of Mr. Curtis and Ms. Bradley: reorganization of the former NovaCare office under Mr. Kerr's management. Regardless of whether the plaintiffs established a prima facie case, we believe that summary judgment was proper because the plaintiffs failed to come forward with probative evidence that the stated reason was a pretext for unlawful retaliation.

A plaintiff can prove pretext by establishing that the defendant's stated reason "1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." *Abbott*, 348 F.3d at 542. Here the plaintiffs do not dispute that the defendant's stated reason has a basis in fact: it is common ground that Hanger acquired NovaCare and designated Mr. Kerr to oversee the operation of what had been NovaCare's downtown Louisville office. It is also undisputed that such a change could easily have led to a reduction in the job duties of former Nova Care employees.

To avoid summary judgment, therefore, Mr. Curtis and Ms. Bradley were required to present evidence that it was not the reorganization of the office that resulted in the diminution of their responsibilities. The mere possibility that displeasure with the plaintiffs' protected activity might have motivated the company's actions is not sufficient in this regard—for otherwise, every prima facie case of retaliation (a case that

must include evidence of a causal connection between the protected activity and the adverse employment action) would create a jury question as to whether the defendant's non-discriminatory explanation was simply a pretext. Mr. Curtis and Ms. Bradley were thus required to present evidence "that an illegal motivation was *more* likely than that offered by the defendant." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).[1]

The plaintiffs have not carried this burden. Although they have shown that the reduction of their duties followed soon after the reporting of Curtis' complaint to Kerr's superiors, the record also shows that Kerr took charge of the former Nova-Care office and began to make changes at about the same time that the complaint was reported. Accordingly, the timing of the adverse employment actions (if that is what they were) is no more suggestive of retaliation than it is of a lawful effort to revamp the newly-acquired business.

The plaintiffs also point to evidence that Mr. Kerr told "some corporate people" that either he or Ms. Bradley "had to go." This statement—which, so far as the record reveals, might have been made before the reporting of the Curtis complaint—is as consistent with Hanger's non-discriminatory explanation as it is with the plaintiffs' claim of retaliation. Bradley had resisted some of Kerr's initiatives, after all, and on one occasion went over Kerr's head to seek relief from a higher-level manager. These conflicts, rather than Bradley's protected activity, might well have prompted Kerr's statement.

If the evidence on which Mr. Curtis and Ms. Bradley rely to show pretext had been presented to a jury, without more, the trial judge, in our opinion, would have been fully justified in granting a defense motion for judgment as a matter of law. This would be so, under *Manzer*, because no reasonable jury could find a retaliatory motive more likely to have animated the defendant than the proffered neutral motive. The evidence in the case at bar happens to have been presented in the form of deposition transcripts rather than live testimony, but that circumstance does not affect the court's analysis. Either way, we believe, the defendant in this case is entitled to judgment as a matter of law.

**AFFIRMED.**

GILMAN, Circuit Judge, dissenting.

Because I believe that the majority holds Bradley and Curtis to a standard of proof higher than that required to defeat a motion for summary judgment, I respect-

---

1. Our dissenting colleague emphasizes that unlike the case at bar, the *Manzer* case *"was tried to a jury."* As the dissent goes on to acknowledge, however, the *Manzer* case was never *submitted* to a jury; employing a standard comparable to that applicable in summary judgment proceedings, the judge who presided over the *Manzer* trial granted a defense motion for a directed verdict. In arresting the *Manzer* case from the jury and entering judgment against the plaintiff, the trial court necessarily determined that "there [was] no legally sufficient evidentiary basis for a reasonable jury to find for [the plaintiff] on [the pretext] issue...." See Rule 50(a)(1), Fed.R.Civ.P., and *cf. Manzer*, 29 F.3d at 1083–85.

By the same token, as we see it, plaintiffs Curtis and Bradley were unable to present any legally sufficient evidentiary basis for a reasonable jury to find in their favor on the pretext issue in the case at bar. That being so, in our view, defendant Hanger was, in the words of Rule 56(c), Fed.R.Civ.P., "entitled to a judgment as a matter of law." Where such a situation obtains, and where the papers before the court show that there is no *genuine* issue as to any material fact, the granting of the motion for summary judgment is not discretionary, but mandatory: "The judgment sought *shall* be rendered *forthwith ...."* Rule 56(c)(emphasis supplied).

fully dissent. In analyzing whether Bradley and Curtis showed that the legitimate, non-discriminatory reason put forth by Hangar for the allegedly adverse employment actions was pretextual, the majority states that they were "required to present evidence 'that an illegal motivation was *more* likely than that offered by the defendant.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original). Maj. Op. 66 (quoting citation). This is not the standard for summary judgment, and *Manzer* was not a summary judgment case.

In *Manzer*, an employee sued his former employer, Diamond Shamrock Chemical Company, for age discrimination under the ADEA. The case *was tried to a jury* and, at the end of all of the evidence, the district court granted Diamond Shamrock's motion for a directed verdict. *Id.* at 1080. In discussing the employee's burden of proof, this court emphasized the requirement that the employee must show pretext by a preponderance of the evidence. *Id.* at 1084. At the summary judgment stage, however, an employee is not required to meet that standard. Rule 56(c) of the Federal Rules of Civil Procedure requires only that the nonmoving party "raise a genuine issue as to any material fact...."

This court has said that "summary judgment should not be permitted except 'where it is quite clear what the truth is.'" *Koepfle v. Garavaglia*, 200 F.2d 191, 193 (6th Cir.1952) (*quoting Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). 10A Wright, Miller's and Kane, *Federal Practice and Procedure* treatise supports this statement:

[A] party moving for summary judgment is not entitled to a judgment merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.... Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper.

Federal Practice and Procedure § 2725 (3d ed.1998).

I believe that the evidence of pretext in the present case is subject to conflicting interpretations. Conceding that Curtis and Bradley "have shown that the reduction of their duties followed soon after the reporting of Curtis['s] complaint to Kerr's superiors," the majority notes that the record also shows "that Kerr took charge of the former NovaCare office and began to make changes at about the same time that the complaint was reported." Maj. Op. 66. The majority then concludes that "the timing of the adverse employment actions (if that is what they were) is no more suggestive of retaliation than it is of a lawful effort to revamp the newly-acquired business." *Id.* Implicit in this statement is the fact that the evidence is open to conflicting interpretations, making summary judgment on this issue inappropriate. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir.2003) (en banc) ("The conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment in the case before us.").

"In considering a motion for summary judgment, the judge's function ... is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and *not to judge the evidence....*" *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir.2004) (quotation marks omitted) (emphasis added). In this case, the majority appears to

have evaluated the evidence and determined that Bradley and Curtis would not be able to prevail at trial—under a preponderance of the evidence standard—on the issue of pretext. That might or might not be true, but such an evaluation is inappropriate at the summary judgment stage of the proceedings. Because I believe that Bradley and Curtis have raised a genuine issue of material fact with regard to pretext, I would reverse and remand.