**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0628n.06
Filed: August 28, 2007

**No. 06-4118**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NATHALIE DOUCET, | ) | |
| | ) | |
|    Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| THE UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
|    Defendant-Appellee. | ) | |
| | ) | |

**Before: GILMAN, GIBBONS and GRIFFIN, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant Nathalie Doucet appeals the district court's grant of summary judgment to defendant-appellee University of Cincinnati ("UC") on her claims of discrimination and retaliation based upon national origin under Title VII. Because Doucet has not demonstrated that she was similarly situated to an employee who received more favorable treatment and cannot rebut the legitimate reasons UC has offered for its allegedly retaliatory actions, we affirm the decision of the district court.

I.

In September 2001, Doucet began working as an Assistant Professor in the UC School of Design's Fashion Design Program. Doucet was initially appointed for a three-year term, with contract renewal contingent on her successful completion of UC's faculty reappointment, promotion,

and tenure ("RPT") process.

The RPT process begins with a faculty applicant's submission of a dossier of work to a committee within her school, in this case the School of Design, which then issues a written recommendation on the application. Further reviews are conducted by School of Design Director Robert Probst, a college-level RPT committee, School of Design Dean Judith Koroscik, and UC's Provost. While the Provost ordinarily makes the final decision on contract renewal and reappointment, applicants may request hearings before the University Faculty Grievance Committee ("UFGC"), which issues written recommendations to UC's President Nancy Zimpher. The UC President retains discretion to reject the UFGC's recommendations, however, and has testified that the grievance procedure is not an appropriate forum for attacking the more "qualitative aspects" of RPT reviews.

The School of Design's RPT criteria analyze faculty in four areas: (1) teaching effectiveness, (2) scholarship and research, (3) creative/professional work, and (4) service. Of these areas, teaching effectiveness is the "primary focus." The parties agree that the RPT criteria require evidence of satisfactory teaching and growth in one or more of the areas of scholarship and research, creative and professional work, and service. The RPT criteria provide that teaching effectiveness is assessed by, among other things, letters of recommendation from teaching colleagues and letters from previous students.

During Doucet's first and second years of teaching at UC, School of Design administrators received or were otherwise made aware of a number of student complaints about her instructional style, grading policies, alleged favoritism, lack of instruction, and excessive workload. Doucet alleges that these complaints were the result of the failure of School of Design administrators,

particularly Probst and Koroscik, to provide her with appropriate guidance. She alleges that Probst sent her "mixed messages" about the flexibility of the RPT criteria and failed to warn her about the teaching deficiencies. Doucet also alleges that Koroscik assigned her to computer-aided design ("CAD") courses that she knew Doucet was unqualified to teach, generating a number of particularly negative student evaluations.

Doucet submits that during UC's spring 2002 term, Probst told her that her School of Design colleagues perceived her as "too French." She further submits that in the fall 2003 term, Koroscik told her that her plans for an international fashion competition were "not the way Americans do it." Doucet alleges that a guest referee at a student fashion presentation told her that she was "not speaking English." Finally, Doucet suggests that UC administrators were influenced by a March 2003 e-mail from a student's parent that accused Doucet of being "very French and very anti-American" and arguing that Doucet should keep any anti-war sentiment to herself "while being paid with American dollars." In general, Doucet has intimated that she was "out of the loop" within the School of Design and that her colleagues at the School resented her for reasons including her national origin.

In February 2003, Doucet submitted a dossier for consideration by the School of Design's RPT Committee. In addition to the materials submitted by Doucet, the Committee considered Doucet's student evaluations and several solicited and unsolicited letters of reference. Two of Doucet's fellow associate professors wrote unsolicited letters expressing concerns about Doucet's teaching abilities and recommending that her contract not be renewed. A third professor, in a letter apparently solicited by Doucet, also recommended against renewal. At least one other professor, a graduate student, and two peers outside UC wrote letters recommending renewal.

In March 2003, the Committee issued a letter unanimously recommending that Doucet not be reappointed. Among other reasons, the Committee found that Doucet had "not demonstrated clear evidence of satisfactory teaching," citing student complaints and the negative references. The Committee noted that Doucet had "done little if any research" and that some of the activities Doucet had listed as research were more properly "regarded as professional or program service." Doucet wrote the Committee to request reconsideration, arguing that her student evaluations were "on average, quite positive" and questioning the grounds for the Committee's other criticisms of her teaching ability. Furthermore, Doucet suggested that to the extent her scholarly work was truly service, the Committee should have recognized that her service was extensive enough to satisfy the RPT criteria. Upon reconsideration, the Committee unanimously reaffirmed its decision, acknowledging Doucet's significant service but finding these efforts insufficient to overcome the weakness in teaching and scholarship.

Probst reviewed the Committee's recommendations and concurred with the decision not to reappoint Doucet, noting the "problematic issues" in Doucet's teaching and that her "most significant contribution to date was in the category of service." Doucet again requested reconsideration, suggesting that her first annual review had not put her on notice of the true expectations for her teaching, research, and other pursuits. The RPT Committee of the UC College of Design, Architecture, and Planning ("DAAP Committee") concurred with the recommendations not to renew Doucet's contract, noting her "uneven" student evaluations, "neglected" student advising, and negative faculty references. In June 2003, Doucet again challenged the recommendation against reappointment, arguing that she had never received warning regarding her teaching effectiveness and contending that the DAAP Committee had placed too much weight on her negative references and

departed from the RPT criteria. She added that she had "the uncomfortable conviction that [her] nationality" was a motivating factor, citing Probst's prior comment that others perceived her as "too French." Koroscik reviewed Doucet's dossier, all the prior recommendations, and all of Doucet's prior challenges to those recommendations and concluded that Doucet should not be reappointed. Koroscik cited Doucet's negative references as evidence of shortcomings in teaching effectiveness and found that Doucet's activities, even characterized as service, did not demonstrate the required growth. In July 2003, Doucet wrote to the UC Provost to request reconsideration of Koroscik's negative reappointment recommendation. In August 2003, the UC Provost issued a short letter denying reappointment, emphasizing that, under the RPT criteria, teaching effectiveness is the primary focus of each faculty member and agreeing with the lower-level assessments that Doucet had "not achieved the necessary threshold of 'satisfactory teaching.'"

In September 2003, Doucet filed a UFGC grievance protesting the nonrenewal of her contract. Doucet complained that she did not receive adequate guidance and mentorship from Probst; that her courseload was unreasonably demanding and included a class for which she was unqualified; that unsolicited reference letters were inappropriately included in the RPT dossier; that the RPT criteria had been ignored or misapplied; that she was denied an opportunity to respond to the DAAP Committee's recommendation; that the School of Design RPT Committee chairperson had not been elected in accordance with UC guidelines; and that the review as a whole was improperly influenced by consideration of her national origin. The UFGC issued a report recommending that Doucet's dossier be supplemented with additional peer teaching evaluations and remanded to the School of Design RPT Committee for a new review. The UFGC found that the RPT criteria had been misapplied, "particularly with regard to student evaluations" and "assessment of

-5-

service, scholarship/research, creative work, and professional activities." It suggested that Doucet's student evaluations had been summarized in an excessively negative light and questioned the classification of service and research, because Doucet "need demonstrate only some activity in one of those areas" under the RPT criteria. The UFGC also found that Probst had given Doucet "mixed messages" about how to comply with the RPT criteria and that Doucet had been assigned to teach a class for which she was unprepared. However, it did not find Doucet's courseload to be inconsistent with the courseload of other newly-hired tenure-track faculty and rejected Doucet's allegations of nation-origin bias in the review process. It recommended that the conflict between two different rules for the election of the chairperson of the School RPT Committee be resolved and that procedures on consideration of unsolicited reference letters should be "clarified" but concluded that the inclusion of these letters was not prejudicial to Doucet because she was provided copies and was allowed to respond.

In February 2004, Zimpher issued a letter declining to follow the UFGC's recommendation to remand Doucet's dossier. After the UFGC requested reconsideration, Zimpher reaffirmed the decision not to reappoint Doucet because Doucet had failed to satisfy the absolute requirement of teaching effectiveness, even if she may have satisfied the other RPT criteria.

In August 2003, shortly before the UC Provost issued his decision not to reappoint Doucet and Doucet filed her UFGC grievance, Doucet became involved in a dispute with the School of Design administration over her course assignments for the fall 2003 term. When a list of fall 2003 teaching assignments was first released in July 2003, Doucet was not included. Six weeks later, after two inquiries, Doucet received her teaching assignments and was told that the delay was caused by a decision regarding a new curriculum. Doucet apparently e-mailed Margaret Voelker-Ferrier, the

fashion department coordinator, and Probst to complain that she had been assigned to teach a new "Introduction to CAD" course for which she felt unqualified. Koroscik responded to Doucet with an e-mail warning that she would initiate a disciplinary action if Doucet "continued to communicate in [an] obstructionist way" with her colleagues. Koroscik also explained that Voelker-Ferrier believed Doucet was qualified to teach the course because Doucet had previously taught a similar but more advanced course. In mid-October 2003, after Doucet filed her UFGC grievance, Koroscik notified Doucet of a disciplinary investigation, which included a charge that Doucet was "not teaching the course content in the Intro to CAD course that [she was] assigned to teach."

Although Doucet's teaching contract ran through September 1, 2004, she did not teach during either the summer 2003 or summer 2004 terms. In May 2004, Probst informed Doucet that the School would "not require [her] services" that summer, stating that "neither the contract nor University Rules guarantee summer teaching to faculty."

In the same academic year Doucet applied for and was denied reappointment, at least two junior faculty within the School of Design, Injoo Kim and Margaret Schroeder, were reappointed. Kim's and Schroeder's dossiers contained uniformly positive letters recommending reappointment, and UC received no complaints from students about their teaching. Kim's and Schroeder's review processes also involved two of the same procedural irregularities as Doucet: unsolicited letters in their dossiers and a Chair of the School RPT Committee that was not properly elected.

In March 2005, Doucet filed this case in district court, alleging that UC's actions had violated her Title VII rights to be free from both (1) "discrimination on account of national origin in the terms, conditions, and opportunities of her employment," and (2) "acts of retaliation for opposing acts of discrimination or other protected activity under Title VII." The district court granted

-7-

summary judgment to UC on both of the claims, reasoning that even if Doucet could establish a *prima facie* case on her claims, she could not rebut the legitimate, nondiscriminatory reasons proffered by UC.

## II.

This court reviews a district court's grant of summary judgment *de novo*, employing the same standard as the district court. *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007). Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision, this court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.

A plaintiff can establish a claim of discrimination under Title VII by producing either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Because Doucet has not advanced a direct-evidence approach before the district court or this court, the court need not consider it. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 881 (6th Cir. 1996).

Under the circumstantial-evidence approach, the court applies the tripartite *McDonnell-Douglas* framework. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). First, the plaintiff must establish a *prima facie* case of discrimination. *Id.* To establish a *prima facie* case of discrimination, the plaintiff must show that (1) she is a member of a protected class; (2) she was

qualified for her job and performed it satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class. *Id.* at 572-73.  If the plaintiff establishes a *prima facie* case, in the second step, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its action. *Id.* at 573.  If the defendant carries this burden, in the third step, the plaintiff must prove that the proffered reason was pretext to hide unlawful discrimination. *Id.*

Doucet argues that the district court erred by comparing Doucet to Kim and Schroeder rather than independently determining whether Doucet satisfied the RPT criteria.  While Doucet is correct that her reappointment was contingent upon whether she met the RPT criteria, not whether she performed as well as other faculty members, she misconstrues the role of the court in a Title VII case.  The court does not sit as a super-tenure committee, substituting its judgment for that of UC as to whether Doucet should have been reappointed. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084-85 (6th Cir. 1994).  "The central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (internal quotation marks omitted).  A *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.*  Without evidence that a similarly situated individual outside of the protected class was treated more favorably, there is no other basis in this case from which to infer discrimination. *See Tally v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995).

Under the most charitable reading of the facts, Doucet has suffered three different, potentially

discriminatory, adverse employment actions: (1) the decision not to reappoint her; (2) the decision not to remand her case for reconsideration; and (3) subjecting her to a less favorable or irregular reappointment process.

However, at least with respect to the second and third actions, Doucet cannot establish a *prima facie* case of discrimination because she has provided no evidence that she was treated less favorably than a similarly situated individual outside her protected class—French national origin. Doucet alleges that two individuals outside her protected class, Kim and Schroeder, were treated more favorably than she. With respect to the decision not to remand Doucet's case for reconsideration, Doucet is not similarly situated to Kim or Schroeder because neither requested reconsideration. Although Kim and Schroeder were subject to the same reappointment process, Doucet has not shown that she was treated to a less favorable process. While the UFGC's report might provide some evidence that her RPT process deviated from UC's official process, Doucet has provided no evidence that Kim and Schroeder were treated more favorably. In fact, the record contains undisputed evidence that with respect to two of her procedural complaints—unsolicited letters included in her dossier and the improper election of the School RPT Committee chairperson— Kim and Schroeder were treated identically. While deviation from the official RPT process might be the basis for a contract dispute, without evidence that the deviation was less favorable to Doucet, no inference of discrimination can arise. *See Furnco Const. Corp.*, 438 U.S. at 577; *see also Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556 (D.C. Cir. 1997) ("When an employer's departure from the prescribed procedure has become the norm, that departure lends no support at all to the plaintiff's inference that the employer's departure is a pretext.") (internal quotation marks omitted).

The court need not address whether Doucet was similarly situated to Kim and Schroeder with

respect to the reappointment decision because, assuming *arguendo* that they are similarly situated and that Doucet has established a *prima facie* case, Doucet has not rebutted UC's proffered legitimate nondiscriminatory reason for its action. Once the employer has proffered a legitimate nondiscriminatory reason for its action, in order to survive summary judgment, "the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the action], or (3) that they were *insufficient* to motivate [the action]." *Manzer*, 29 F.3d at 1083-84 (internal quotation marks omitted).

Here, UC asserts that Doucet was not reappointed because she failed to demonstrate satisfactory teaching. Relying on the UFGC's finding that her student evaluations were viewed in an excessively negative light, Doucet argues that a jury could conclude that she had demonstrated sufficient evidence of satisfactory teaching and that UC's proffered reason lacks a basis in fact. However, Doucet does not dispute that the RPT criteria require evidence of satisfactory teaching and that the assessment of teaching effectiveness is provided by, among other things, letters of recommendation by teaching colleagues and letters from previous students. Nor does she dispute that her dossier contained letters recommending that she not be reappointed and that UC received complaints from students about her teaching. Doucet's teaching was cited as a reason for denying reappointment at every level of the RPT process. Therefore, UC's proffered legitimate nondiscriminatory reason for not reappointing Doucet has a basis in fact.

Doucet's argument fares no better if construed to claim that UC's proffered reason was insufficient to motivate its action. In order to make this showing, Doucet must present "evidence that other employees, particularly employees not in the protected class, were [reappointed] even

-11-

though they engaged in substantially identical conduct to that which the employer contends motivated its [nonreappointment] of the plaintiff." *Id.* at 1084. Doucet has not presented any evidence that the professors who were reappointed, Kim and Schroeder, had similar complaints about their teaching. Rather, Doucet seeks to have the jury independently review her dossier to determine whether her teaching was satisfactory. As explained above, it is not the role of the court to sit as a super-tenure committee, substituting its judgment for that of UC as to whether Doucet should have been reappointed.

Finally, Doucet argues that UC's proffered reason did not actually motivate its action. In order to succeed, Doucet must show that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.* To this end, Doucet relies upon Probst's statement that her School of Design colleagues perceived her as "too French" and Koroscik's statement that her plans for an international fashion competition were "not the way Americans do it." However, these isolated and ambiguous comments that are remote in time and unrelated to the reappointment process cannot, by themselves, support a finding of discrimination. *See Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993). Furthermore, Probst and Koroscik were only two of many who unanimously recommended against Doucet's reappointment. Although this fact is not in itself dispositive, Doucet has presented no evidence from which a jury could conclude that Probst and Koroscik sufficiently influenced the RPT process so as to prompt the decision not to reappoint her. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1327 (6th Cir. 1988).

As Doucet has failed to rebut UC's proffered legitimate nondiscriminatory reason for its negative reappointment decision, her claim of national-origin discrimination fails.

B.

In the absence of direct evidence, retaliation claims are also governed by the *McDonnell-Douglas* burden-shifting framework. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002). To establish a *prima facie* case of retaliation, the plaintiff must show that:

> (1) [s]he engaged in activity protected under Title VII; (2) the defendant knew that [s]he engaged in the protected activity, (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) the protected activity and the adverse action were causally connected.

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," not simply "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The plaintiff's burden to establish a causal connection between the protected activity and the adverse action is minimal at the *prima facie* stage, "requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action taken against the plaintiff. *West v. Fred Wright Constr. Co.*, 756 F.2d 31, 33-34 (6th Cir. 1985). The plaintiff then bears the ultimate burden of persuading the court that the proffered nonretaliatory reasons are a pretext and that the actual reason was retaliation for engaging in a protected activity. *Id.* at 34.

-13-

Doucet alleges that UC took five retaliatory actions against her, for each of which UC has proffered a legitimate, nonretaliatory reason. First, Doucet complains of the decision not to remand Doucet's RPT process, but UC has presented evidence that Zimpher decided not to remand the process because Doucet failed to meet the RPT criteria for teaching, despite any procedural irregularities noted by the UFGC. Second, Doucet complains of the delay in making her fall 2003 teaching assignments, but UC has presented evidence that the delay was caused by decisions regarding a new curriculum. Third, Doucet complains of her assignment to teach a computer-design course for which she was not qualified, but UC has presented evidence that Voelker-Ferrier believed Doucet was qualified to teach the course because Doucet had previously taught a similar but more advanced course. Fourth, Doucet complains of her exclusion from the summer 2004 teaching roster, but UC has presented evidence that Doucet's services were not needed. Fifth, Doucet complains of the initiation of a disciplinary investigation against her, but UC has presented evidence that Koroscik initiated the disciplinary action because she believed Doucet was not teaching an assigned course as instructed and was creating a hostile work environment for students.

Once the employer has come forward with a nonretaliatory reason for its action, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext by establishing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Abbot v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (citing *Manzer*, 29 F.3d at 1084). With respect to the first four alleged retaliatory actions, Doucet has not presented any evidence to rebut UC's proffered reasons, so these claims of retaliation fail.

With respect to the initiation of a disciplinary investigation against her, Doucet relies upon

three pieces of evidence to argue that UC's proffered reason did not actually motivate the action. First, Doucet claims that Koroscik expressly threatened to retaliate in an e-mail. In this e-mail, Koroscik wrote:

> I am responding to the messages you have sent to your program coordinator and school director objecting to being assigned to teach the Intro to CAD course in the fall quarter. I find your accusations of unfair treatment in those messages to be unfounded and inappropriate. You must learn to communicate with your colleagues respectfully and professionally. If you continue to communicate in this obstructionist way, you will leave me no choice but to initiate a disciplinary action . . . .

When deposed, Koroscik explained that the disciplinary action would be taken "[i]f [Doucet] protested to actually teaching a course that she was assigned to" because "that is a breach of contract." The record does not include the e-mails to which Koroscik refers in her e-mail. This evidence provides no basis on which to conclude that UC's proffered reason was pretextual. Rather, this evidence is entirely consistent with UC's explanation that the disciplinary action was the result of Doucet's refusal to teach an assigned course, not her allegations of national-origin bias. Second, Doucet claims that the notification of disciplinary action cited her grievance as a basis for the action. Among the charges being investigated, the notification of disciplinary action includes:

> 1. That you are not teaching the course content in the Intro to CAD course that you were assigned to teach. As you are aware, we are currently in mediation because of your unhappiness at receiving this assignment in the first place. If the charges are true, it would appear that you have, in actuality, refused this assignment.

When deposed, Koroscik admitted that, at the time of the notification, Doucet was in the midst of pursuing a grievance regarding her assignment to teach the course. Again, however, this evidence is entirely consistent with UC's proffered reason that the disciplinary action was the result of Doucet's refusal to teach the Intro to CAD course, not the assignment of the course or the filing of a grievance. Third, Doucet argues that retaliation can be inferred because Koroscik did not proceed

with disciplinary action until after Doucet had lodged her grievance. This temporal proximity does nothing to rebut UC's proffered reason. As a practical matter, UC could not bring a disciplinary action against Doucet for her failure to teach the assigned course content until she had failed to teach the assigned course content, after teaching had begun for the fall 2003 term. Doucet has provided no evidence to suggest that UC was aware of her misconduct prior to the filing of her grievance but delayed disciplinary action until after her grievance had been filed. None of the evidence on which Doucet relies to rebut UC's proffered nonretaliatory reason provides a basis for concluding that the proffered reason did not actually motivate the disciplinary action. Therefore, Doucet's claim of retaliation fails.

## III.

For the foregoing reasons, we affirm the district court's decision.