NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0438n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 01, 2022
DEBORAH S. HUNT, Clerk

MICHAEL A. CALDWELL (22-1031);
ROBERT M. HAHN (22-1032),
      Plaintiffs-Appellants,

v.

JOSEPH M. GASPER, in his individual and
representative capacities; MICHIGAN
STATE POLICE, an agency of the State of
Michigan,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
MICHIGAN

OPINION

Before: COLE, CLAY, and MATHIS, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiffs, Michael Caldwell and Robert Hahn ("Plaintiffs"), appeal the district court's orders granting Defendants, Joseph Gasper and the Michigan State Police's ("Defendants," "Gasper," or "MSP," respectively) motions for summary judgment on Plaintiffs' Title VII and 28 U.S.C. § 1981[1] retaliation claims.[2] Plaintiffs' amended complaints allege that Defendants demoted Caldwell and terminated Hahn in retaliation for their protected opposition to: (1) Defendants' diversity initiatives; and (2) Defendants' alleged double standards in meting out discipline. For the reasons set forth below, we **AFFIRM** the district court's orders granting Defendants' motions for summary judgment.

---

[1] Plaintiffs have brought a § 1983 lawsuit based on violations of § 1981. *See Boxill v. O'Grady*, 935 F.3d 510, 519–20 (6th Cir. 2019).

[2] Plaintiffs Caldwell and Hahn each filed separate cases at the district court. The district court issued a single opinion posted in each Plaintiff's respective docket. Although Plaintiffs each filed separate appeals, this Court's opinion addresses both of their claims together, as they share the same set of facts.

## I.   BACKGROUND

### A.  Factual Background

This case is about two employees who were disciplined for misconduct and for disobeying certain rules when handling the transfer process for a subordinate.  They brought suit alleging that the punishment they received was not justified and was imposed instead in retaliation for their opposition to their employer's efforts to diversify the police force.

Michael Caldwell and Robert Hahn served as police officers for the Michigan State Police ("MSP") for over thirty years. Until recently, Caldwell was the captain of the seventh district in northern Michigan.  Hahn served as an inspector and reported to Caldwell in the same district. Caldwell and Hahn have been close friends since they attended the state police recruit school together in 1990.

In the fall of 2019, Plaintiffs were involved in a series of events that culminated in Caldwell's demotion and Hahn's dismissal.  Plaintiffs allege that their dismissal and demotion were due to their voicing concerns over double standards and discriminatory treatment by the MSP towards white males in promotion and hiring.  Defendants contend that Plaintiffs were not dismissed for voicing their concerns over discrimination, but rather, because of misconduct relating to the interview and selection process of an employee seeking to transfer to an open position in their district.  Before the district court, Plaintiffs alleged that they were discriminated against and retaliated against by the MSP because they are white males and because they opposed MSP's diversity initiatives.  The district court determined that Plaintiffs failed to establish a prima facie case of reverse discrimination because they could not point to any similarly situated non-white non-male employees who were treated differently.  Plaintiffs have since abandoned and

waived their discrimination claims, focusing only on their claim that they were retaliated against for opposing MSP's diversity initiatives.

The following sections detail the events that took place in the fall of 2019, when Plaintiffs: (1) mishandled the transfer interview process of a subordinate; and (2) expressed their opinions about the MSP's new diversity initiatives.

### 1. Misconduct in Handling Transfer

On October 9, 2019, an assistant post commander position became available in Gaylord, MI, in the seventh district (then Caldwell and Hahn's district). The position was open only to employees eligible for lateral transfer or demotion. The only officer to apply for the position was a white male, Michael Bush. Bush had worked for the MSP for twenty years and had recently been promoted to detective lieutenant, serving as the Traverse Narcotics Team Commander in the seventh district.

When Bush expressed interest in the position, Hahn, Caldwell, and Bush's direct supervisor, First Lieutenant ("Lt.") Belcher, each spoke with him individually and told him they would not support his transfer because they needed him in the Traverse narcotics unit. Bush was required to obtain a recommendation from his supervisor on a PD-35 form to submit with his application. Belcher completed the PD-35 form for Bush and praised Bush's work in his current position but wrote that he was not recommended for the position because he had not been in his latest position long enough to warrant a promotion to assistant post commander.

The PD-35 was forwarded to human resources ("HR"). Upon receipt of the PD-35, HR Director Stephanie Horton spoke with Lt. Colonel Richard Arnold (Caldwell's supervisor), and they concluded that Belcher's non-recommendation contained in the PD-35 was invalid because it was based solely on Bush's short time in his current position, and not on his performance.

Thereafter, Arnold called Caldwell and they discussed Bush's application. Arnold told Caldwell that MSP policy required Bush to be given an interview and that all policies should be followed. Caldwell told Arnold that unless he was overruled, he planned to deny the transfer. Arnold assured Caldwell that he would not overrule the results of the interview panel.[3] Caldwell said he left the conversation believing that Arnold told him to go through the motions of the policy.

The hiring manager for the assistant post commander position was First Lt. Jason Nemecek. Caldwell instructed Nemecek to follow policy, convene an interview panel, and interview Bush for the position. Caldwell made clear to Nemecek, however, that he would not approve the transfer regardless of the results of the interview. On October 28, 2019, Nemecek and a colleague, Connie Swander, interviewed Bush. Nemecek and Swander rated Bush very highly, 52 out of 60 points, on a form known as the PD-11. The PD-11 is required for certain positions, but it was not required for this position and HR did not list it as a required form in the instructions sent to Nemecek. Nemecek and Swander both signed the completed PD-11 form.

Hahn received the signed PD-11 form and a memo indicating that Bush had been recommended for the assistant post commander position. Hahn was surprised to receive this memo and sent it to Caldwell. Caldwell spoke with Nemecek about the scores and the selection memo, and Nemecek explained that he was going through the motions and believed he had done what the process required. After this conversation, Caldwell purportedly believed that Nemecek may have inflated Bush's scores. Caldwell asked Hahn to follow up with Nemecek and ask him if the scores on the PD-11 accurately reflected Bush's performance in the interview, and if they did not, to resubmit it with accurate scores. Hahn did as he was told and spoke with Nemecek. Nemecek, in

---

[3] During his deposition, Arnold indicated he believed that Caldwell was going to serve on the interview panel.

turn, discussed Hahn's comments with Connie Swander, but she refused to change the scores. Nemecek let Hahn and Caldwell know that Swander did not want to revisit the score.

Caldwell then spoke with HR Director Stephanie Horton about Bush's application and the scores on the PD-11. During their conversation, Horton let Caldwell know that the lateral interview process did not require the use of the PD-11 form or even a full selection memo. On October 30, 2019, Nemecek revised the selection memo to advise that Bush would not be selected and to request that the assistant post commander position be opened to all applicants.

### 2. Investigation into Misconduct

Two days later, MSP's professional standards committee received a complaint against Hahn alleging that Hahn manipulated the hiring process to prevent Bush from obtaining the assistant post commander position. First Lt. Brody Boucher, who served as commander of the professional standards section, investigated the complaint. As part of the investigation, Boucher monitored Hahn's and Caldwell's emails, reviewed all documents relating to Bush's application, and interviewed all of the individuals involved during the process, including Hahn, Caldwell, Nemecek, Belcher, Swander, Horton, Arnold, and Bush. Boucher's 55-page report includes notes from those interviews and detailed Nemecek's discomfort with Hahn's instructions to alter the scores on the PD-11. According to the report, Nemecek "felt sick to his stomach" and "feared retaliation from command." (Boucher Investigation Rep., Hahn R. 142-2, Page ID #1006.)[4]

---

[4] For citations to the appeals court docket, "Caldwell ECF No." refers to the docket in Caldwell's case, *Caldwell v. Gasper*, No. 22-1031. The docket in Hahn's case, *Hahn v. Gasper*, No. 22-1032, in turn, is referred to by using "Hahn ECF No."

Likewise, for citations to the record before the district court, "Hahn R." refers to the trial court docket in Hahn's case, *Hahn v. Gasper*, No. 1:20-cv-403. The record in Caldwell's case, *Caldwell v. Gasper*, No. 1:20-cv-411, in turn, is referred to by using "Caldwell R."

Nemecek also detailed several instances during the application process where Hahn raised his voice and intimidated him into rewriting the selection memorandum.

Boucher's investigation report was sent to Director Gasper on March 5, 2020. On March 9, 2020. Hahn and Caldwell were given a statement of charges and proposed discipline. The charges against Hahn related to his using his position to "bully and intimidate" employees under his command "to manipulate a selection process to ensure a qualified candidate was not selected." (Statement of Charges, Hahn R. 142-15, Page ID #1053.) The charges against Caldwell indicated that he violated civil service rules during the selection process by directing his employees to score the applicant according to Caldwell's predetermined outcome and not on the basis of merit. (Statement of Charges, Caldwell R. 137-15, Page ID #1017.) The charges recommended that Caldwell be demoted and Hahn be terminated.

### 3. Complaints About Diversity Initiatives and Double Standards

Caldwell and Hahn allege that they engaged in protected conduct by complaining about diversity initiatives and double standards within the MSP beginning in August 2019 until March 2020, when disciplinary proceedings were initiated against them. They argue that these complaints motivated the MSP to retaliate against them. Their complaints are summarized as follows.

### a. Complaint One: Sergeant Gill's Comedy Routines (Hahn only)

Hahn's first complaint was about a Black colleague's comedy routine. In August 2019, Hahn attended a retirement party. The party featured an open-mic segment, during which Sergeant Dwayne Gill, who served in the recruiting and selection department of the office of equity and inclusion, delivered a comedy routine that featured racial jokes. Hahn was upset with the jokes that Gill made during his routine and he reported them to Gill's supervisor, Inspector Lisa Rish, on September 3, 2019. Rish advised Hahn that she would get back to him about his complaint

after the October fall executive forum. Unsatisfied, Hahn also wrote an email to HR complaining about and linking to Gill's standup routines, many of which were available for viewing on YouTube. On September 19, 2019, Hahn ran into HR Director Stephanie Horton, and she mentioned she had received his email and forwarded it up the chain of command. A few weeks later, Gill's supervisor, Rish, informed Hahn that the MSP was launching an internal investigation of his complaint on Sergeant Gill's comedy routine. The investigation into Gill culminated in a finding that he had violated conduct policies and a recommendation that Gill be suspended for two days. The two-day suspension, however, was later waived by Colonel Arnold. Hahn was unsatisfied with how this investigation was handled and appealed the results to HR. He wrote to them:

> The actions I took in this matter were "protected activities," taken to remedy a clear double-standard, which has long been condoned by the Michigan State Police, and affords, among other current advantages. a higher level of first amendment protections to certain ethnic and gender classes, than it does others. As the initial primary complainant in this matter, the obstruction I was required to hurdle in order to stir other responsible commanders and division heads to action, and the lack of corrective measures taken to address Sgt. Gill's improper conduct, are wholly unacceptable and appear discriminatory against members of other ethnicities in Michigan state government. I believe an investigation into the criteria cited in dismissing Sgt. Gill's proposed discipline is in order, as well as an investigation into the gross lack of oversight by those who command the offices, divisions, and bureaus charged with assuring equal and consistent adherence to MSP's Discriminatory Harassment Policy.

(Robert M. Hahn Decl., Hahn R. 145-12 at Page ID #1263.)

### b. Complaint Two: Debriefing the Fall Forum (Caldwell and Hahn)

On October 8, 2019, Director of the MSP, Joseph Gasper held a fall forum meeting. Defendants allege that during this meeting, Gasper released a strategic plan for 2020–2022; reiterated that diversity is the number one priority of the department; said that individuals should not think of themselves but the agency as whole if denied a promotion for the sake of diversity;

and stated that the MSP is "way too White [sic] and way too male."  (Pet'r's Br., Caldwell ECF No. 23 at 13; Op. and Order, Caldwell R. 166, Page ID # 1435; Strategic Plan Document, Caldwell R. 137-18, PageID # 1047.)  Both Hahn and Caldwell complained about the MSP's diversity push during a debrief of the MSP's fall forum that took place the next day.

The day after the fall forum, Lt. Colonel Arnold chaired a field operation bureau meeting to discuss the diversity initiatives put forth by Gasper.  At this meeting, Caldwell and Hahn both criticized Gasper's comments and his proposed initiatives. Caldwell stated that he was concerned about how these diversity initiatives were affecting white males and that the term "white male" had taken on a negative connotation.  He stated that white males feel like they are being excluded from promotional opportunities because of their race and gender and asked how the diversity initiative would foster an atmosphere of inclusion for members who are not female or members of a racial or ethnic minority.  Hahn stated that recruiting and promotions should be based on merit only and that it was not the MSP's fault that it was a majority white male agency.  He also criticized the MSP's "hand-wringing over demographics" as an "unwise response to the false claims of institutional racism by Black advocacy groups in the wake of Retired Colonel Etue's race-neutral Facebook post."[5]  (Robert M. Hahn Decl., Hahn R. 145-12 at Page ID #1259.)

Plaintiffs allege that they became "persona non grata" after they made these statements, and their colleagues avoided them, especially when Director Gasper was present.  (Pet'r's Br., Caldwell ECF No. 23 at 18; Pet'r's Br., Hahn ECF No. 23 at 19.)  Caldwell recalls that Director

---

[5] Although not mentioned in the record, this Court takes judicial notice, pursuant to Federal Rule of Evidence 201, of a news article indicating that in October 2017, Colonel Kriste Kibbey Etue posted a meme on her Facebook page calling NFL players who kneel during the national anthem "degenerates." *See* Cheyna Roth, *Activists continue to call for Col. Etue's removal*, WNMU-FM PUBLIC RADIO (Oct. 17, 2017), https://www.wnmufm.org/law-enforcement/2017-10-23/activists-continue-to-call-for-col-etues-removal.

Gasper ignored him and turned his back to him at a conference after he came over and rendered a hand salute.

### c. Complaint Three: Diversity and Inclusion Presentation (Caldwell only)

Caldwell complained about the diversity initiatives again during a presentation on diversity and inclusion. On December 12, 2019, Caldwell attended a presentation by Inspector Lisa Rish, who served as the Equity and Inclusion Officer for the MSP. At this meeting, Caldwell expressed his concerns about the diversity initiative and expressed his belief that the term white male had taken on a negative connotation within the MSP. Caldwell asked how a series of leadership seminars for women in law enforcement "fostered a feeling of 'inclusion' by male MSP members." (Michael A. Caldwell Decl., Caldwell R. 142-14 at Page ID #1237.)

### d. Complaint Four: Email about Double Standard within MSP (Hahn to Caldwell)

At 10:35 a.m. Sunday March 8, 2020, Hahn wrote Caldwell an email expressing his frustration that Sergeant Gill mocked racial minorities during a comedy routine and only received a two-day suspension that was later waived. Hahn wrote, in relevant part:

> I feel the double-standfard concerns I made known to our EIO, the Office of Professional Standards, the director of our Human Resources Division, and my bureau leadership, continue to be ignored. Because of this, I feel rather foolish for having stepped up to assure EQUAL rights and protections for ALL department members.

(Pet'r's Br., Hahn ECF No. 23 at 20.) Plaintiffs argue that the timing of the discipline reveals retaliation, as it is undisputed that Defendants were monitoring their emails and that their disciplinary processes began the day after the email was sent.

### 4. Disciplinary Hearing

At 1:15 p.m. on Monday, March 8, 2020, the day after Hahn sent that email to Caldwell, they were served with statements of charges and proposed discipline. The charges related to Hahn

and Caldwell's handling of the selection process for the post commander position. Four days later, Lt. Colonel Chris Kelenske and Inspector Lisa Gee-Cram oversaw a disciplinary hearing during which they upheld the discipline recommended by HR: demotion of Caldwell and termination of Hahn.

### B. Procedural History

In May 2020, Caldwell and Hahn filed separate lawsuits against the MSP, Governor Gretchen Whitmer, and Director Gasper, alleging that they had suffered unlawful race and gender-based discrimination and retaliation for complaining about discrimination. In July 2020, they each filed amended complaints. The district court dismissed every claim other than the discrimination and retaliation claims against Gasper and the MSP.

Defendants thereafter moved for summary judgment. The matter was fully briefed, and the district court held a hearing on the motions. At the hearing, Plaintiffs confirmed that they waived the § 1983 discrimination claim against Gasper. The district court thereafter granted Defendants' motions for summary judgment. Plaintiffs timely appealed the order. On appeal, Plaintiffs expressly waive their Title VII discrimination claims, and appeal only the district court's grant of summary judgment on their retaliation claims against Gasper and the MSP.

## II. DISCUSSION

### A. Standard of Review

This Court reviews a district court's grant of a motion for summary judgement *de novo*. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022). Summary judgment is properly granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

When evaluating whether a motion for summary judgment was properly granted, "this Court views the evidence in the light most favorable to the party opposing the motion." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," since "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.  Section 1981 and Title VII Retaliation Claims Against Defendants

Plaintiffs bring retaliation claims against Gasper and the MSP pursuant to 28 U.S.C § 1981 and Title VII. As the district court correctly determined, § 1983 provides "a vehicle to vindicate [plaintiffs'] rights under § 1981." *Boxill v. O'Grady*, 935 F.3d 510, 519–20 (6th Cir. 2019). Claims for retaliation under §1981 are analyzed under the same framework as claims for retaliation brought pursuant to Title VII. *Id*. at 520.

A claim for retaliation can be proven with either direct or circumstantial evidence. *See Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). Direct evidence does not require any inferences to be drawn regarding what motivated the employer's actions. *Id*. Plaintiffs do not dispute that they have not brought forward direct evidence of retaliation, so this Court will apply the *McDonnell-Douglas* burden shifting framework for circumstantial evidence of retaliation. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

A prima face case of Title VII retaliation requires a showing that plaintiffs: (1) engaged in protected activity; (2) the defendants knew of this protected activity; (3) the defendants subsequently took an adverse employment action; and (4) that a causal connection exists "between

the protected activity and the adverse employment action." *Goller v. Ohio Dep't of Rehab. & Correction*, 285 F. App'x 250, 256 (6th Cir. 2008) (citing *E.E.O.C. v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997)). If the plaintiff can make out a prima facie case, "the burden of production shifts to the defendant to show that it had a legitimate, non-discriminatory basis for the adverse action." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). The plaintiff must then show "by a preponderance of the evidence" that defendants' stated reasons were pretext for retaliation. *Id*.

At issue on appeal is whether the district court erred by determining that Plaintiffs failed to (1) make out a prima facie case because they did not engage in protected activity and because Defendants were not aware they engaged in protected activity,[6] and (2) show that Defendants' non-discriminatory reasons for the adverse actions were pretext.

1. Prima facie case

Here, Plaintiffs cannot make out a prima facie case for discrimination because they did not engage in protected activity. Plaintiffs argue that the following constitutes protected activity: (1) Hahn's complaints about Sergeant Gill's comedy routine; (2) Hahn and Caldwell's concerns about Director Gasper's diversity initiatives expressed in a meeting on October 9, 2019; (3) Caldwell's comments during the December 12, 2019, diversity and inclusion presentation that the term white male had taken on a negative connotation; and (4) Hahn's email to Caldwell on March 8, 2020, decrying double standards in relation to Sergeant Gill's discipline.

---

[6] Because we find that Plaintiffs did not engage in protected activity, we need not analyze whether Defendants were aware of Plaintiffs' protected activity. Even if Plaintiffs' conduct constituted protected activity, however, Plaintiffs presented no circumstantial evidence, beyond their own speculation, that indicated that either Gasper or Kelenske had knowledge of their complaints. *See Proffitt v. Metro. Govt. of Nashville and Davidson County, Tenn.*, 150 F. App'x 439, 443 (6th Cir. 2005) (finding plaintiff's reliance on a string of inferences insufficient to establish defendants' knowledge of protected activity); *see also Mulhall v. Ashcroft*, 287 F.3d 543, 553 (6th Cir. 2002).

Title VII forbids employers from retaliating against employees who oppose employment practices that may be unlawful under Title VII. 42 U.S.C. § 2000e–2(a)(1); *see also Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). An employee does not need to be correct that the employment practices he opposes are *actually* unlawful. *Yazdian,* 793 F.3d at 646–47. Instead, the employee need only prove that his complaints about the employment practices were based on "a reasonable and good faith belief that the opposed practices were unlawful." *Johnson v. U. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (internal quotation marks omitted); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). The requirement that the complaint be based on a reasonable and good faith belief has both an objective and subjective component. The employee who complains "must actually believe[] that the conduct complained of constituted a violation of relevant law, and a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee would believe that the conduct complained of was unlawful." *Yazdian*, 793 F.3d at 646–47 (internal quotation marks omitted).

A vague charge of discrimination does not constitute protected activity. *See id.* at 645; *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (noting that a vague charge of discrimination is insufficient to constitute protected activity because "every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination"). A plaintiff need not lodge a complaint with "absolute formality, clarity, or precision" but must make a specific allegation about unlawful employment discrimination and not merely express concern about "management practices." *Yazdian*, 793 F.3d at 645, 647. 3d.

Plaintiff Hahn's complaints about how the investigation into Sergeant Gill's comedy routines was handled were not protected activity because he did not complain about unlawful activity by the MSP, but rather, about management practices. Hahn did not complain because he felt that specific individuals in the office were being discriminated against or because Gill created a hostile work environment;[7] Hahn was complaining because he felt that the discipline meted out to Gill was insufficient. Even if Hahn's complaints are to be construed as complaints about unequal treatment in discipline, Hahn's comments about unequal treatment were still too vague to constitute protected activity. *See Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 530–31 (6th Cir. 2004) (determining that district court properly granted summary judgment because plaintiff's letter was not protected activity where it contained vague charge of unequal treatment).

The same is true of Hahn's March 8, 2020, email to Caldwell regarding the alleged double standards in the handling of his complaint about Sergeant Gill. Hahn made only conclusory allegations of double standards without describing how MSP's actions in responding to his complaint were discriminatory or unlawful. *Fox v. Eagle Distribg. Co., Inc.*, 510 F.3d 587, 591–

---

[7] Hahn does not argue that his complaints were an attempt to notify his employers about a hostile work environment, but even if he did, his complaints about Gill do not constitute protected activity because there is no objective basis for believing that Gill's comedy routine created a hostile work environment. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (noting that to establish that complaint about hostile work environment is protected activity, plaintiff must provide evidence of "an environment that a reasonable person would find hostile or abusive" and show he "subjectively perceive[d] the environment to be abusive"); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (determining that plaintiff's complaint about single incident where supervisor and colleague made sexual joke was not protected activity because "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard" for a hostile work environment); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" to constitute a hostile work environment). Moreover, Hahn himself admitted he was not offended by Gill's routine, thus failing to establish the subjective requirement that he believed he was experiencing a hostile work environment. (Email from Hahn to Lisa Gee-Cram, Hahn R. 145-13, Page ID #1265 ("On a personal note, Sgt Gill's remarks that people might be 'as confused as Amish people in a Best Buy store.' My grandparents were Mennonites, however, I'm not personally offended since I'm not outraged by everything.")).

92 (6th Cir. 2007) (determining that plaintiff's general complaints of unhappiness with defendants' actions and about management being "out to get him" was not protected activity where it did not allege acts of discrimination).

Caldwell and Hahn's criticism of Director Gasper and the MSP's diversity initiatives are also not protected activity because their criticism was comprised of general complaints about unfairness and dissatisfaction with the MSP's reactions to public outcry over the lack of diversity within the police force. Plaintiffs' comments did not indicate that they or another employee were being discriminated against in hiring and promotion. *Balding-Margolis v. Cleveland Arcade*, 352 F. App'x 35, 45 (6th Cir. 2009) (determining that plaintiff's complaints did not constitute protected activity where the complaints concerned general "work-related issues" and expressed that plaintiff was "simply unhappy with the manner in which [defendant] conducted business.").

Caldwell's comments at the diversity and inclusion presentation on December 12, 2019, are similarly vague and nonspecific. At that meeting Caldwell again expressed his concern about a negative connotation associated with the word "white male" and with white males feeling like there was not enough programming specifically targeted towards them. He made no specific allegations of discrimination against him or another employee that would be sufficient to constitute protected activity. *See Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (noting that plaintiff's complaint was not protected activity and was only a vague charge of discrimination where plaintiff complained that charges against him were a result of "ethnocism."). Because Plaintiffs' complaints were vague, nonspecific charges of discrimination and mismanagement, their comments cannot be considered protected activity and Plaintiffs are unable to establish a prima facie case of discrimination.

## 2. Pretext

Even if Plaintiffs could demonstrate a prima facie case of retaliation, they have not presented sufficient evidence to show that Defendants' legitimate nondiscriminatory reason for the adverse action was pretextual. Defendants' proffered reason for Caldwell's demotion and Hahn's dismissal was that Plaintiffs showed incompetence and used their positions to manipulate the interview process for the assistant post commander position to suit their own ends, rather than following policy. Unlike the showing at the prima facie stage, the burden at the pretext stage is onerous: Plaintiffs must "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [retaliation]." *Alexander v. Ohio State U. College of Soc. Work*, 429 F. App'x 481, 489 (6th Cir. 2011) (quoting *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

To prove pretext, a plaintiff has the burden to show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). The ultimate inquiry in using any of these three methods is an assessment of whether the "employer made up its stated reason to conceal intentional [retaliation]." *Id.* at 530 (internal quotation marks omitted).

The district court determined that Defendants had satisfied their burden of showing that they honestly believed their non-discriminatory reason for dismissing Hahn and demoting Caldwell. A plaintiff cannot show pretext when an employer has an honest belief in its nondiscriminatory reason for discharging an employee and relies on "particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*,

274 F.3d 1106, 1117 (6th Cir. 2001); *see also Briggs v. U. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021).

In this case, Plaintiffs argue that Defendants and the district court's reliance on Boucher's report was "misplaced" because "Boucher was **not** a decisionmaker or participant in the decision-making process." (Pet'r's Br., Hahn ECF No. 23 at 45.) Plaintiffs cite to no authority, and we know of none, to support their contention that an employer or a court is not permitted to rely on the testimony of an individual tasked by the employer to investigate the claims of misconduct. Where an employer conducts a thorough investigation and makes an employment decision based on facts uncovered in that investigation, plaintiffs do not demonstrate pretext simply because they "might have come to a different conclusion if they had conducted the investigation." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 287 (6th Cir. 2012).

Plaintiffs point to eight other categories of evidence that they argue proves pretext: (1) that the MSP only offers settlements to less serious offenses, meaning that MSP viewed Hahn and Caldwell's offenses as less serious; (2) that the district court considered the discipline levied against Hahn "heavy handed;" (3) that there was no factual basis for Kelenke's assertion that Hahn lied when he denied telling Nemecek to use a PD-11; (4) that there is no factual basis for the proposition that Hahn and Caldwell lied about whether the PD-11 form was required; (5) that Defendants' explanation for the adverse action keeps changing; (6) that Defendants treated a similarly situated employee far better than Hahn even though that employee engaged in egregious conduct; (7) that defendants attempted to conceal the identity of the decisionmaker in this case; and (8) that Defendants' explanations "smack of mendacity." (Pet'r's Br., Hahn ECF No. 23 at 45–46.) None of these categories of evidence proves that Defendants did not honestly believe that

Caldwell and Hahn mishandled the interview and selection process for the assistant post commander opening.[8]

Plaintiffs also argue that the honest belief rule does not apply when a cat's paw theory is advanced—where there is evidence that a "biased subordinate intentionally manipulated the decisionmaker"—citing *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 380 (6th Cir. 2017). While Plaintiffs are correct, Plaintiffs did not present any evidence that Gasper or Kelenske were manipulated by a subordinate with discriminatory animus towards Hahn or Caldwell. Kelenske's termination decision was based on Boucher's investigation report. Plaintiffs do not point to any evidence that Boucher was influenced by any biased subordinate nor that Boucher himself was biased against Caldwell or Hahn. Furthermore, the honest belief rule can be applied to "the allegedly biased lower-level decisionmaker; that is, the defendant may show that the lower-level subordinate was not actually biased by showing that the lower-level subordinate held an honest belief that justified the adverse action against the plaintiff." *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 380 n.3 (6th Cir. 2017). Boucher testified that the report he prepared was based on his interviews with Plaintiffs and all relevant witnesses and he believed that the evidence showed that they had ordered Nemecek to manipulate Bush's scores. Plaintiffs point to no evidence indicating that Boucher did not honestly believe the findings contained in his investigation report.

---

[8] Each of the pieces of evidence they offer is insufficient: (1) the fact the MSP only offers settlements to less serious offenses does not mean that it was not an offense the MSP was entitled to discipline; (2) the district court's thoughts about the severity of the punishment meted out does not affect the legal analysis relevant to whether Defendants' invocation of the honest belief rule is proper; as for reasons (3), (4), (5), the fact that Plaintiffs would have conducted the investigation differently or come to a different conclusion is not sufficient to overcome Defendants' honest belief, and Defendants' explanation for the discipline has not changed merely because there are gaps in knowledge or slight inconsistencies in the testimony of different employees; (6) Plaintiffs admit that the "similarly situated employee" is not similarly situated because he committed a more egregious offense; (7) none of the evidence cited indicates that Defendants sought to conceal the identity of the decisionmaker, and indicates that Kelenske was the decision maker; and (8) this is a conclusory allegation unsupported by the record.

Accordingly, Plaintiffs also fail to establish that Defendants' employment decisions were pretextual.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's order granting the Defendants' motion for summary judgment.